I concur, therefore, in the reversal of the judgment.

Judgment reversed, new trial granted, costs to appellant to abide event.

---

EUGENE K. SMITH, Appellant, *v.* ALICE KETELTAS, Individually and as One of the Trustees under the Will of HENRY KETELTAS, Deceased, and Others, Respondents.

*Trust — right of the trustee to use money received for part of the trust estate, taken in condemnation proceedings, in replacing old buildings upon the remaining land — it is not his duty to reserve income for that purpose.*

Where trust property is taken in condemnation proceedings and the trustee applies a portion of the award to the construction of new buildings upon lots constituting part of the trust estate which were covered with old buildings, many of which had been ordered removed by the building department as being unsafe and incapable of further repair, and all of which were substantially in an untenantable condition, the trustee is entitled to be credited with the amount so expended especially where the expenditure operated to the advantage of both the life tenant and the remainderman.

It is not the duty of the trustee to reserve and withhold from the life tenant sufficient of the income from year to year for the purpose of erecting wholly new buildings when those already upon the trust property, by reason of lapse of time, have become incapable of further repair.

APPEAL by the plaintiff, Eugene K. Smith, from an interlocutory judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 24th day of December, 1900, upon the decision of the court rendered after a trial at the New York Special Term.

*C. Bainbridge Smith*, for the appellant.

*Lewis Cass Ledyard*, for certain respondents.

*John E. Parsons*, for the respondent Alice Keteltas as committee.

O'BRIEN, J.:

The nature of the action and the questions involved are fully presented in the opinion of the learned judge at Special Term, which is reported in 32 Miscellaneous Reports, 111, and from which we take the liberty to quote:

" This action is brought on the part of the plaintiff to recover of the defendant Edith M. K. Wetmore, the younger, as sole executrix under the will of Henry Keteltas, the last surviving trustee of the estate of John Gardner, deceased, an undivided one-seventh part of the sum of $230,040.36 received by said Henry Keteltas as trustee, on the 4th of May, 1894.

" John Gardner died in December, 1817, leaving a last will and testament in which certain trusts were created for the benefit of his children. The trust for his daughter Malvina, who afterwards married Eugene Keteltas, is the trust involved in this action and terminated upon her death, June 20, 1894. Prior to the termination of this trust, Henry Keteltas, son of Malvina Keteltas, had been substituted as trustee, and at the time of the transactions under consideration was sole trustee of the trust for his mother. Prior to 1892 the city of New York instituted proceedings to acquire for purposes of a public park, certain real estate which formed part of the trust estate ; and on May 5, 1894, Henry Keteltas, as trustee, received an award for property taken amounting to the sum of $230,040.36    It is claimed that a large portion of the award was applied by the trustee to the construction of buildings upon vacant lots in the city of New York. These lots had formerly been improved ; but the buildings were ancient and generally of frame

construction, in some instances with brick sides or fronts. Many of them were ordered down by the building department as being unsafe and incapable of further repair, and all of them were substantially, if not entirely, in an untenantable condition. The trust term had been in existence nearly sixty years, and these buildings, some of them, were said to have been over one hundred years old and others fifty years old. \* \* \* The plaintiff was examined as a witness on both trials upon the question as to his having received notice of the appropriation of a portion of the amount of the award by Henry Keteltas, surviving trustee under the will of John Gardner, to the erection of said buildings. On that trial he admitted that, before this suit was brought, he knew that the money had been expended on these buildings. \* \* \* On the present trial the witness says that he never knew or heard that his uncle devoted a portion of this award to payment for erection of houses until trial before Judge WERNER, and then says that he first heard it from his father, who is attorney in this case ; cannot tell whether it was a year ago or two years ago ; that then his father told him only that defendants made such a claim in their answer ; and when asked the direct question by his counsel whether he was mistaken in his testimony on the first trial to the effect that he did know this money had been expended upon these buildings, before he brought this suit, he answered, ' I think I was.' It appears from the evidence that the plaintiff has, ever since the death of Henry Keteltas, been in receipt of statements of the amount of rents, and has also received his proportionate share of the rents of the property held in trust by the latter."

In passing upon the claim of the plaintiff that he did not know of the appropriation of a portion of the moneys received from the award to the erection of the buildings and that there is no evidence that any of the moneys were thus applied, the learned judge says : " I think that a very strong presumption of such knowledge on the part of the plaintiff arises from the discrepancy between his testimony on the first and second trials. But, assuming that the plaintiff had no knowledge upon the subject, I also think that enough has been shown from the portions of the entries contained in the cash book of Henry Keteltas which were admitted in evidence upon the trial and by the testimony of the architect, Kutzner, to justify the conclusion that certain expenses were made by the trustee from

moneys received upon the award for the purpose of erecting new buildings in place of those which had become untenantable by reason of decay and which had been condemned by the board of health as unsafe."

The other necessary facts connected with the issue presented upon this appeal are to be found in *Greason* v. *Keteltas* (17 N. Y. 491) wherein the Court of Appeals gave a construction to the will of John Gardner; and one of the judges in the opinion in that case discusses the extent of the power conferred upon the trustees by the will. The fundamental question which was presented upon this trial and which is before us upon this appeal, is as to the power of the trustees to appropriate any portion of the amount received from the award to defray the expense of erecting new buildings or in restoring dilapidated buildings. We have taken our statement from the opinion and could safely place our affirmance upon the findings of fact and conclusions of law of the learned trial judge, were it not that the importance of the question involved and the earnestness with which the contention has been made that the conclusion reached was legally wrong, make it proper that we should briefly refer to the authorities which we think support his decision.

The general rule as stated in Perry on Trusts (Vol. 2 [5th ed.], § 475) with respect to a trust created by will which is imperative, is as follows: "The duty and power given in such trusts must be strictly performed. There is no room for discretion or divergence from the particular directions contained in the instrument as where money was left to a trustee to be laid out in lands, he had no discretion to purchase land with a part of the moneys and to expend the remainder in repairs and improvements." The authorities cited in support of this rule are largely cases arising either between cotenants or between life tenants and remaindermen. In *Matter of Deckelmann* (84 Hun, 476), Mr. Justice CULLEN, after stating the rule as between life tenants and remaindermen, said: "But there is now a tendency to limit the application of the rule stated. In the recently decided case of *Stevens* v. *Melcher* (80 Hun, 514) it was held that certain permanent repairs on the trust realty should be charged to the *corpus* of the trust, not to the equitable life tenant." In that case (*Stevens* v. *Melcher*) Mrs. Stevens, with the consent of

the trustees, had furnished money for the construction of a building upon the trust estate and upon appeal to the Court of Appeals (reported in 152 N. Y. 566) it was said : " If we were to treat Mrs. Stevens as a life tenant and limited in authority to the rules of the common law, there might be some difficulty in sustaining the conclusion reached by the General Term with reference to this item of her claim, but such does not appear to be her relation to the estate. The testator did not see fit to give her the possession and control of the million-dollar trust or of the real estate set apart for and composing that trust ; but, instead thereof, gave the same to others in trust, to ' hold, invest and manage ' during her life, to collect the income and the receipts therefrom and pay to her, and upon her decease to divide the trust estate or fund among the remaindermen specified. The trustees were thereby made the owners and given the possession of the trust estate, and as such had certain duties to perform with reference thereto ; they were required to invest and manage so as to produce an income for Mrs. Stevens and to care for and preserve the principal of the estate for the benefit of the remaindermen. The relation of Mrs. Stevens was that of life beneficiary under the trust, the *cestui que trust* of her trustees."

And in Chaplin on Express Trusts and Powers (§ 437), in discussing the question of what may and may not be deducted from income, it is said : " The starting point must be the general and rather strict principle that the trustee or any life tenant is not authorized to run up charges for repairs or improvements against the remainderman or to eat into the capital. * * * It seems, however, that this rule has become somewhat relaxed, and that the tendency of the later cases is to limit its application." In support of this last statement, the author refers to the two decisions from which we have already quoted (*Stevens* v. *Melcher* and *Matter of Deckelmann, supra*), and while he states the general rule that the interest of a remainderman is not to be depleted or charged with improvements unless authority to that end can be derived from some competent source, he adds many exceptions, one of which we think applicable to the facts here appearing and which he states as follows : " In cases where on accounting, all parties being before the court, it appears that the net result of the trustee's use of the *corpus* for outlays, even though unauthorized, has, in fact, resulted in no loss

or shows a gain and where, accordingly, in adjusting the accounts the court may set off the depletion of *corpus* against its accretion according to general principles of equity," there it will be done.

An examination of the authorities which sustain the general rule as well as those which, from the necessities of particular cases have engrafted upon it numerous exceptions, will show, with respect to the action of trustees in dealing with the trust estate, that where their course is dictated by good motives, by wise judgment and in accordance with prudent and sound business principles, the tendency of the courts is to treat the trustee fairly and justly. This we understand to be but another way of saying what has been so well expressed in the leading case in this State of *King* v. *Talbot* (40 N. Y. 76) relating to the duty of trustees in making investments, " that the trustee is bound to employ such diligence and such prudence in the care and management as, in general, prudent men of discretion and intelligence   *   *   *   employ in their own like affairs."

There was no proof given that the trustee did not perform his duty with respect to using such part of the income as was proper in keeping the buildings in repair; and the presumption in the absence of evidence to the contrary being that he performed his duty in that regard, we must assume, as was in effect found by the Special Term, that the buildings upon the lots constituting a part of the original estate left by John Gardner had merely by lapse of time become so worn out and dilapidated and incapable of further repair as to be ordered down by the building department. It was clearly to the advantage of both the life tenant and the remainderman that after these buildings were removed they should be succeeded by other and more modern buildings; and the evidence shows that the action of the trustee in the erection of the new buildings was wise and prudent and for the best interest of the property. As it was of advantage to the estate, therefore, that new buildings should be substituted in the place of those which had become useless or which had been taken down by order of the board of health, the only remaining question is as to whether the trustee was justified in using any portion of the award for this purpose or was obliged to allow the property to remain in an unproductive state. This latter certainly would not be for the interest of any one; and if new

buildings were to be substituted for the old, we would have — leaving out the possibility of the trustee advancing his own money for the improvement, which he might be reluctant to do — but one or the other of the following means available from which funds could be secured to rebuild, namely, either to borrow on a mortgage which, as we take it, would be equally objectionable to the appellant, or else to use a portion of the award as was done. Of these available means clearly the latter was less objectionable, because it was merely changing what was real estate, for that, legally, was the nature of the award, into other real estate. In other words, it was converting a portion of the *corpus* of the estate so as to create in another form property which equally constituted a portion of the *corpus* of the estate.

As we understand the argument of the appellant, however, the insistence is two fold, namely, that under no circumstances was it within the right or power of the trustee to use any portion of the *corpus* of the estate to erect the new buildings or make improvements; and, secondly, that he should, out of the income, from year to year, have expended sufficient to keep the property in a proper tenantable condition. The first of these contentions we have briefly referred to; and the second, so far as it relates to an accumulation of income, we think, would have been impracticable, because, as already stated, it is fair to assume, on the proof before us, that the condition of the buildings resulted not from the necessity of temporary repairs, but from age, which had rendered them so dilapidated and unsafe that their removal became necessary. To meet such a contingency as the destruction of the buildings by age out of the income would necessarily have required, during the long years of the trust, a reservation of a sufficient amount of income to replace the old with new buildings. This, however, as we have said, would have been impracticable, for, in addition to the difficulty of determining just what amount should be annually reserved for that purpose, there would be the question, and a serious one, as to what extent those entitled to the income could be deprived of a portion thereof for the benefit of those who were eventually to succeed to the *corpus* of the estate. On this branch of the case we entirely agree with the respondent that " it cannot be contended with any show of reason that the trustee was bound in administering this

trust through a period of eighty years to reserve and withhold from the life tenant moneys out of the income for the purpose, not of repair, but of erecting wholly new buildings when those already upon the premises should, by reason of lapse of time, become incapable of further repair."

Apart, therefore, from the question as to whether the plaintiff is estopped from opposing such outlay by reason of his knowledge thereof and failure to object; or as to whether or not the act of 1839 (Laws of 1839, chap. 345), conferring upon the trustees of this estate certain powers, is constitutional, or gives to the trustee, if constitutional, the right to make the expenditure, it will be seen that we have reached the conclusion that, upon the facts here appearing, the principle laid down by the learned judge at Special Term to be applied upon the accounting in reference to such expenditure, as it may be proved the trustee made, is right and proper, not alone because it is supported by authority, but because it is clearly equitable and just. Had the property been left unimproved and were the award in a trust company still intact, the plaintiff would be no better off than he is as the result of the taking of a portion of the award and improving the property; but we think it would be inequitable to a degree to permit him to succeed to an interest in the estate which has been enriched by the action of the trustee, and, while obtaining all the benefits of the expenditure, to impose upon the trustee or his estate the burden of bearing the entire cost of the improvements. To what extent the trustee may have used the award in erecting new buildings and in improvements, it is not our purpose now, any more than it was that of the Special Term upon the trial, to ascertain. All that has been decided by the interlocutory judgment is that such amounts as may be proved to have been paid out of the award by the trustee for legal expenses and for the construction of buildings upon the trust estate, he should be credited with, and out of the residue of the award after deductions so made, the plaintiff is entitled to receive one-seventh, which judgment we think is right and should be affirmed, with costs.

PATTERSON, INGRAHAM, McLAUGHLIN and HATCH, JJ., concurred.

Judgment affirmed, with costs.