(45 Misc. Rep. 564.)

## In re PARR et al.

### (Surrogate's Court, Westchester County. December, 1904.)

1. TESTAMENTARY TRUSTEES—ACCOUNTING—RIGHTS OF INFANTS.

Where a special guardian does not make formal objections to questionable items in the accounts of testamentary trustees, the court will protect the infant remainderman.

2. SAME—PERMANENT IMPROVEMENTS.

Where, under an order of the building department of a city, testamentary trustees are required to repair foundation walls and put in fire escapes, expenses may be properly charged to the corpus of the trust estate.

3. SAME—ENHANCING RENTAL VALUE.

Improvements in real estate made to enhance the rental value should be charged to the life tenants, and not to the remaindermen of the trust estate.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trusts, §§ 389, 390.]

In the matter of the accounting of Benjamin Parr and Susie L. Parr, trustees under the will of Susan P. Lilienthal. Decree rendered.

David Bennett King, for trustees.
David B. Simpson, special guardian.

SILKMAN, S. No formal objections are made to the account by the special guardian. Nevertheless he makes a detailed report upon certain expenditures hereinafter mentioned, and approves them as a charge against principal. The better practice would have been for the special guardian to have made formal objections. As to the duty of special guardians, see Edsall v. Vandemark, 39 Barb. 589. Nevertheless, the court's attention having been called to the items as to which difference of opinion may exist, it becomes its duty, as an auditing officer, to act independently before approving and allowing the account.

The trustees have charged for alterations, improvements, and repairs made upon premises 217 to 221 Washington street, in the city of New York, belonging to the trust estate, sums herein below stated, and have deducted the amount from the principal account, upon the theory that such alterations, improvements, and repairs are permanent improvements of such a character as to justify such a course. The items are:

Paid to Moen's Asphaltic Cement Company for making cellars under said property water-tight..................................... $4,000 00
Paid to Freeman Bloodgood, Jr., for lowering first tier of beams and altering store front............................................. 1,251 87
Paid to S. D. Kelly for altering and shifting girders, partitions, and floors on five lofts, plastering, etc................................ 2,381 91
Paid to James Taylor for fire escapes.............................. 210 00

The first and fourth items, aggregating $4,210, are properly deducted from principal. The trustees were required by the building department of the city of New York to put the foundation walls and the cellars in a safe and sanitary condition, and to erect fire escapes. The directions of the building department were compul-

sory, and the trustees had no discretion in the matter. They were in their nature improvements that went to benefit the freehold—as much so as if the public authorities had ordered a sewer in the street, or a sidewalk in front of the premises. Under the authority of Stevens v. Melcher, 80 Hun, 514, 30 N. Y. Supp. 625, affirmed 152 N. Y. 551, 46 N. E. 965, the expense became a proper charge against the capital of the estate.

The other two items, aggregating $3,633.78, were for alterations and repairs not included in the mandate of the building department, but were expenditures made under the following circumstances: Prior to the death of testatrix the property had been leased for a term of years for occupation as a cold storage plant. For the purposes of this business, and for the accommodation of the tenant, the latter had been allowed to make certain alterations in the building. After the lapse of years the lease expired, and possession of the premises was surrendered. So far as it appears, there was no provision in the lease requiring the tenant to restore the premises to their original condition, and they remained as they had been altered to suit the business of a cold storage warehouse. The building so altered was not suitable or rentable for other purposes. The trustees, in exercising their discretion, deemed it wise to restore the building more to its original condition, so that the ground floor throughout is now on the same plane, which is down to near the street level, instead of being, as to the front portion, three steps higher than the rest. Beams and girders in the lofts had been cut by the tenant to accommodate the cold storage apparatus, and these were repaired and restored, as were also the floors and partitions which had been worn out. It does not satisfactorily appear here why these repairs and restorations should be charged to principal, or why the expense thereof should not be borne by the life tenants, and be paid out of their income. It is contended that these alterations and improvements were necessary, and were of a permanent nature, and that it was the duty of the trustees to make them, in order to obtain a proper rental for the premises; justifying a charge of the cost against the principal of the trust fund. But merely putting the building back in the shape it was before the alterations by the tenant for cold storage purposes is not necessarily making improvements of a permanent nature. It was so in a sense, but not in that sense that justifies the depletion of the principal for the doing of them. It was a restoration which may well have been anticipated when the alterations were made, and have been provided for in the rent reserved. It was a proper case in which to have established a sinking fund out of the rents, sufficient to restore the premises at the end of the demised term to their original condition. In any view, renewals of worn-out floors and partitions and replastering lofts come under the head of repairs, pure and simple. Such wear and tear in rented buildings are always present, and restorations of such a character, due to wear and tear, are constantly provided for in leased warehouses.

The trustees urge that Stevens v. Melcher is authority for their contention. What is said in that case as to expenditures made pur-

suant to a mandate of the building department has been followed and applied here. In this as in the Stevens Case, there can be no question as to the power of the trustees, under the trust established by Mrs. Lilienthal's will, to make proper improvements and needed repairs and restorations of leased premises; and, under extraordinary conditions, where special equities were found to exist, a case might be made which would justify a charge for such expenses against the capital of the trust estate. But the court must be jealous of the integrity of the corpus of the estate, and not open the door to charges against it without extreme caution; otherwise it would be the constant subject of assault at the instance of the life tenant. Special equities were found to exist in the Stevens Case, in the matter of two old residences, valued with the lot at $150,000, and mortgaged for $140,000. Interest upon this debt, together with taxes, exceeded the income by more than $9,000 in one year. The trustees were declared to have been justified in removing the old and erecting new buildings complete, and in paying for the improvements out of the principal; and the equity was that otherwise this very valuable property might have been wasted, leaving nothing for either life tenant or remaindermen. Such peculiar equities are not shown to exist in the case under consideration. The repairs made in the lofts were such as would naturally be required at the end of a long lease, and before a new tenant would be willing to take possession. They should not be classed as permanent improvements, nor the expenses charged to principal. They were made primarily for the benefit of persons entitled to income, and were of immediate, and will be of continuous, benefit to them. "Those who receive the benefit must pay the cost." Stevens v. Melcher, 80 Hun, 524, 30 N. Y. Supp. 625. Furthermore, this property did not come to the trustees in an untenantable condition, but occupied and paying rent. Upon the expiration of a long lease, repairs which were to be anticipated, and, with prudent management, provided for by reserving a part of the rents received, became necessary.

One of the remaindermen is an infant. His interests require that the principal of the estate should not only be safely invested, but safeguarded and protected in every respect, and the court must see that that is done which he is unable to do for himself.

The account as filed is approved, except in respect to the two items above referred to, aggregating $3,633.78, which must be transferred from principal to income account.

Let findings and decree be submitted in accordance with this memorandum.

Decreed accordingly.