Matter of the Estate of JAMES H. HEROY, Deceased.

(Surrogate's Court, New York County, January, 1918.)

Trustees — testamentary — powers of — trusts — accounting — wills.

Where the principal asset of a testamentary trust was an unrentable building located in a business section and totally unadapted to conditions of business of to-day, and the trustee has power under the will to make permanent improvements where it would be reasonably anticipated that such an investment would be beneficial to both the life beneficiaries and to the remaindermen, and irrespective of the powers given to the trustees under the will there are special equities as shown by the stipulated facts upon the accounting of the surviving trustee, his account, in which the amount of expenditures for repairs to the building was charged against the *corpus* of the trust fund, will be settled as filed, all of the adult remaindermen consenting and asking for a decree to that effect.

PROCEEDING upon the account of a surviving trustee.

Niles & Johnson (Henry B. Johnson of counsel), for William W. Heroy, surviving trustee.

Ralph Q. Kelly, for Annie P. Heroy and others, remaindermen.

20

Surrogate's Court, New York County, January, 1918.　[Vol. 102.

J. Robert Rubin, special guardian (in person), for William M. Heroy, 2d, James H. Heroy, 2d, Christina T. Heroy, Robert Heroy Woodward, Barbara Woodward, Edward Y. Woodward, Elizabeth Harris and Richard P. Dyckman, infants.

COHALAN, S.　This matter comes before the surrogate on the objections filed by the special guardian to the items set forth in Schedule G of the account of the surviving trustee concerning the expenditure of the sum of $15,364 for repairs on a building forming part of the trust estate.　These expenditures have been charged off in the account against the principal of the trust fund.　On the hearing of the objections counsel submitted the matter on an agreed statement of facts substantially as follows:　James H. Heroy, the testator, died on December 26, 1896, leaving a last will and testament under which the surviving trustee is now accounting.　He left him surviving his widow, Amelia W. Heroy, four daughters, Martha Heroy, Mary White Heroy, Annie Pluymert Heroy, Amelia James Heroy, who have not married; a daughter, Louise Chance Dyckman, who is married, and a son, W. W. Heroy, the surviving trustee.　The widow and children of the testator still survive.　The principal asset of the trust fund held by the trustee under the trust provisions of the will of testator consists of the building Nos. 108–110 Duane street, New York city.　It is a five-story loft building, and was rented to two tenants at the date of testator's death until May 1, 1904, at the annual rental of $8,750.　In 1904 a lease for the term of eleven years was made to the Merchants Dining Room Company at the rate of $8,500 per annum for the first year and $9,500 for the balance of the lease.　At the expiration thereof the tenant declined to renew the lease.　The property remained vacant for the ensuing year and produced no income, except the sum of $182.87 received

Misc.] Surrogate's Court, New York County, January, 1918.

for storage, and the further sum of $143.60, the annual payment under a party wall agreement. The taxes during this period were approximately $2,000. Since the death of the testator in 1896 the character of business transacted in this locality has changed. The trustee made diligent efforts to rent the premises, but received no proposals to rent the same or any part thereof for the purposes for which they were formerly used. In fact no proposal to rent the premises was received, except that an offer was finally made by a firm in the paper business to rent the store and basement and the first and second lofts. The building had no elevator, and was not suitable in other respects for a business of this character. The floors, which were originally constructed to carry 120 pounds to the square foot, were of insufficient security, and in order to obtain the *only* tenants available the trustee was put to the necessity of installing an elevator which would run to the sub-basement and to strengthen the floors so that they would bear 200 pounds to the square foot. Accordingly the trustee made the above mentioned and other necessary changes, including the cementing of the sub-basement floor, the installation of electric wiring on the first floor, basement and sub-basement, steam heating connections and toilets on the second and third floors. All these improvements cost the sum of $5,460. Thereupon the trustee leased the store, basement and sub-basement to the Champion Coated Paper Company. for over five years from April 1, 1916, at $5,750 per annum for the first three years and $6,000 per annum for the last two years. The first and second lofts were rented to Lasher & Lathrop, another paper concern, for thirteen months from April, 1916, at $2,750 per year. The third and fourth lofts remained vacant another thirteen months, until May 1, 1917. As before, the trustee endeavored in every way to obtain a tenant for the vacant floors, but could not obtain any offers to

rent the vacant lofts for any purpose for which they were suitable. Eventually the Champion Coated Paper Company finally leased the third and fourth lofts on May 1, 1917, until April 30, 1921, the balance of the term covered by their lease of the store, basement and sub-basement, at an annual rental of $2,750 for the first two years and $2,500 for the last two years. This lease was obtained by making changes which rendered the premises suitable to the use of the tenant. Additional changes, made necessary by the statutory regulations of the fire department, state labor bureau and building department enacted in this state since the death of the testator, were also made by the trustee. As to these additional changes the special guardian offers no objection. The expense of all these changes has been charged by the trustee to the principal account held in trust under testator's will. The premises since the changes were made now rent at a rental approximately $1,750 per annum in excess of what they formerly rented for before the changes were made. By his will testator left one-half of his property in trust for his widow for life, and on her death one-sixth thereof in trust for each of his five daughters for their respective lives, with remainders to their heirs *per stirpes.* The remaining one-sixth he gave to his son outright. He also left one-twelfth of his estate in trust for each of his five daughters, with remainders upon the death of each to her heirs *per stirpes.* The remaining one-twelfth he devised to his son outright. The special guardian herein represents the interest of seven great grandchildren of the testator and one grandson who is over twenty years of age. The children, grandchildren and greatgrandchildren of the testator are all living, so that the only infant having a vested remainder in any of the trusts is the grandson of the testator, Richard P. Dyckman. All of the remaindermen who are of age consent through their

attorney to the account as filed and ask for a decree settling the same as filed. Ordinarily the duty devolves upon tenants in common in possession, life tenants, or trustees for equitable life tenants, of preserving the premises, defraying the expenses of ordinary repairs and of paying the taxes and the accruing interest upon mortgages which may incumber the premises. *Matter of Albertson,* 113 N. Y. 434, 439. The special guardian seeks to charge the expense of the improvements made by the trustee herein against the income received from the trust fund upon this theory, and cites *Jacobs* v. *Steinbrink,* 164 App. Div. 715, and *Matter of Parr,* 45 Misc. Rep. 564; affd., 113 App. Div. 921, in support of his contention. In *Matter of Parr, supra,* the property held by the trustees had been leased prior to the death of the testatrix as a cold storage plant. For the purpose of this business and for the accommodation of the tenant the latter had been allowed to make certain alterations in the building. When the lease had expired, after the death of the testatrix, the premises were surrendered in the condition in which they then were. The trustee subsequently restored the building to its original condition, as the premises were not suitable to or rentable for any purpose other than the one for which it was primarily occupied, and sought to charge the expenses of these alterations against the principal of the trust fund. In disallowing the charge against principal the court pointed out that merely putting the building back in its previous condition was not necessarily making improvements of a permanent nature, with which the principal was chargeable, but, on the contrary, it was a restoration which might well have been anticipated when the alterations were in order, and might have been provided for in the rent reserved. In that case the property did not come to the trustees in an untenantable condition, but was occupied and yielding rent. The repairs made were such

as would naturally be required at the end of a long lease, before a new tenant would be willing to take possession, and in their nature were of immediate and continuing benefit to those persons entitled to the income.    In *Jacobs* v. *Steinbrink, supra,* the charge sought to be made against the principal was for expenses, incurred by the owners of one-quarter, and as *cestuis que trustent,* the recipients of the income of the remaining three-quarters of certain premises, for the restoration of " the aforesaid premises to a proper tenantable and usable condition." The court disallowed the same on the general principle that the life tenant must bear the expense of repairs and improvements, unless the case comes within one of the few exceptions recognized by the courts of this state. These two cases, however, are not controlling in this matter, as the facts stipulated by counsel bring the matter now here within the principle laid down in *Stevens* v. *Melcher,* 152 N. Y. 551.  The testator did not see fit to give this estate to the equitable life tenants.  He gave the fund to his trustees in trust to collect the income and to pay the same to them, and upon their respective deaths to pay over the fund to the remaindermen.  Consequently, the trustees were made the owners of the trust estate.  They had the possession of the same, and as such had special duties to perform with reference thereto.  They were required to invest and manage the same so as to produce an income for the widow and the five daughters of the testator, and to care for and preserve the principal of the trust estate for the remaindermen.  From the facts stipulated it appears that the building was vacant for thirteen months and was not capable of yielding sufficient income to pay the carrying charges.  During this period the loss to the equitable life tenants exceeded the sum of $11,000.  The trustee was not faced with the situation where the property produced suffi-

cient income to carry itself, although meagre and leaving but small profit to the life beneficiaries, but, on the contrary, he had on his hands a building located in a business section which was totally unadapted to conditions of business of to-day and, as stated in the facts stipulated, totally unrentable. Consequently it was the duty of the trustee to preserve the building for the remaindermen, and at the same time to produce an income sufficient to render the premises self-sustaining and an aid to the beneficiaries. It was under these circumstances the improvements were performed the cost of which is the subject of the objections filed. The improvements made by the trustee resulted not only in increasing the income derived from this particular property approximately $1,750 per annum, but added greatly to the value of the remainder as well. In this case, as in *Stevens* v. *Melcher, supra,* there is no question as to the powers of the trustee to make proper improvements and investments. By paragraph fifteenth of the will the testator appointed his executors and trustees and gave them '' and to the survivors and survivor of them full power and authority to invest, call in and reinvest any and all of the estate of which I shall die possessed, upon the trusts and for the purposes hereinbefore expressed, and to fully execute the trusts herein contained.'' Paragraph ten of the will provides as follows: '' *Tenth.* It is my desire that any and all investments I shall have made during my life continue without change after my decease; but I authorize and empower my trustees, and the survivors and survivor of them, to change such investments from time to time, if deemed for the interest of my estate, due regard being always had for safety in the securities taken.'' The immediate object of testator's bounty was to provide for the support of his wife and daughters. It is plain from the facts stipulated in this matter that the property was in such condition in 1915 that

Surrogate's Court, New York County, January, 1918.   [Vol. 102.

it would continue to remain vacant and unproductive, which must in a short time threaten the principal with serious deterioration. The permanent improvements made by the trustee were as important for the preservation of the principal of the trust estate as to insure some return to those entitled to the income, and were not made by the trustee primarily for the benefit of the equitable life tenants. I am of the opinion, therefore, that the trustee had the power under the will to invest the proceeds of the trust in making the permanent improvements where it would be reasonably anticipated that such investment would be beneficial to both the remaindermen and the life beneficiaries. Under circumstances where special equities are found to exist, and where relief is sought through a court of equity, a case may be made which would justify a charge against the capital of the trust estate for permanent improvements which were necessary for the preservation of the property. *Ford* v. *Knapp,* 102 N. Y. 135; *Matter of Whitney,* 75 Misc. Rep. 610. In my opinion such special equities are shown by the stipulated facts to exist in this matter, irrespective of the powers given the trustee under the will, which I have alluded to above. Some question might be raised as to apportioning the expense of some of the permanent improvements made by the trustee herein between the life beneficiaries and the remaindermen according to the benefits accrued to each. After careful consideration, however, I am of the opinion that, in view of the fact that the contingent remainders are so remote and the portion of the expense which would be the subject of the apportionment is so small, substantial justice would be done to all concerned by settling the account as filed, and I so direct.

Decreed accordingly.