The plea of *res adjudicata* is sustained and the indictment is dismissed.

Ordered accordingly.

---

PEERLESS CANDY CO., INC., Plaintiff, *v.* MAX KESSLER et al., Defendants.

Supreme Court, Kings Special Term, June 23, 1924.

**Partition** — claim for taxes, moneys expended and repairs to premises — plaintiff acquired tax lien on property and subsequently procured life tenant's interest and interest of two remaindermen — life tenant suffered property to become uninhabitable — repairs done and moneys expended by plaintiff after life tenant parted with interest in property — plaintiff entitled to claim by reason of tax lien, and taxes and water rents paid — duty of life tenant to keep premises in repair — plaintiff, succeeding to life tenant's interest, not entitled to funds expended for repairs — lack of evidence to show improvements made were necessary for preservation of property.

On a motion to confirm the report of a referee on title in an action for the partition of real property it appears that the plaintiff claimed reimbursement for the restoration of and repairs to the premises and for taxes and other moneys

expended; that the plaintiff acquired a tax lien on the premises and subsequently procured by conveyance the life tenant's interest as well as the interest of two of the remaindermen; that the life tenant, while an occupant of the premises, permitted them to become untenantable and neglected to pay the taxes and water rents; and that subsequent to the time the life tenant parted with his interest in the life estate, the plaintiff expended various amounts for repairs and restoration of the property.

*Held,* that the plaintiff is entitled to its claim or lien by reason of the tax lien and taxes and water rents paid prior to acquiring the property;

That no part of the sums expended by the plaintiff, who succeeded to the interest and position of the life tenant, on the premises for repairs and improvements should be charged against the remaining remaindermen, since it is the duty of the life tenant to keep the premises subject to the life estate in repair or at least in as good condition as they are in at the inception of the life estate.

The plaintiff will be deemed to have made improvements to the property on its own responsibility and at its own expense, since there is no evidence that the improvements were necessary for the preservation of the property or that the remaindermen assented to them.

Motion to confirm report of referee.

*William H. Good,* for the plaintiff.

*William J. McDermott,* for Bella Kessler.

*Lewis & McNamara (Daniel McNamara, Jr.,* of counsel), for the defendant Nellie Kealy Collins.

*Maurice Raidman,* for the defendant Anna Kealy Albanese.

Benedict, J. This is a motion to confirm the report of the referee on title in an action for the partition of real property. The order of reference authorized the referee, among other things, to ascertain and report with respect to claims for restoration of and repairs to the premises and for taxes and other moneys paid by any party to the action. The plaintiff has made certain claims of this nature, and the referee has reported that it is entitled to reimbursement therefor out of the proceeds of the sale, prior to the distribution of the proceeds among the cotenants.

The premises involved in this action were formerly the property of Johanna D. Lane, who died on January 17, 1909, seized of the same. She left a will, whereby she devised said premises to James Kealy for life, with remainder to his lawful " heirs " (which the referee finds was intended by the testatrix to mean lawful " issue " ), subject to certain conditions, and in default of such issue to Mary Ann Fitzpatrick, Jane Fitzpatrick, Nellie Kealy (now Nellie Kealy Collins), and Annie Kealy (now Annie Kealy Albanese), in fee, with certain provisions as to survivorship in case of the decease of any of them. James Kealy afterwards died without issue, and the several surviving remaindermen are parties defendant to this action.

On May 14, 1921, the plaintiff acquired a tax lien on said premises for $673.49, for taxes accrued prior to March 15, 1916. On June 10, 1921, to protect its said tax lien, plaintiff paid taxes for the years 1916 to 1920, inclusive, and water rents from 1915 to 1919, inclusive, amounting to $614.38. On July 19, 1921, plaintiff, through one Bella Kessler, acting as a dummy, acquired the life estate of said James Kealy in said premises. On August 3, 1921, the plaintiff, also through said Bella Kessler, as dummy, acquired the remainder interest of said Jane Fitzpatrick, who, as the survivor of her sister, said Mary Ann Fitzpatrick, had succeeded to the latter's interest. On November 25, 1921, Bella Kessler conveyed all her right, title and interest in and to the premises to the plaintiff, subject to the said tax lien and all other claims of the plaintiff, without merging same. James Kealy, the life tenant, died July 3, 1922.

The life tenant, James Kealy, neglected the premises and suffered them to get into such disrepair that they were untenantable, and he also neglected to pay the taxes and water rates. The plaintiff claims to have expended, and the referee has found that it did expend, for the repair and restoration of the premises, $2,367.85 in excess of rents received. The work was done and moneys expended during the lifetime of said James Kealy, but after he had parted with his ownership of the life estate.

I have already expressed the opinion that plaintiff is entitled to a prior claim or lien by reason of the tax lien aforesaid, and by reason of the taxes and water rents paid to protect the same prior to plaintiff's acquirement, through Bella Kessler, of the life estate. See N. Y. L. J. (p. 766) May 23, 1924. I see no reason to change this ruling.

I reach the opposite conclusion with respect to the sums expended for the work of repair and restoration. It is elementary that it is the duty of a life tenant to keep the premises subject to the life estate in repair, or at least in as good condition as they are in at the inception of the life estate. The evidence shows that the premises were in good, tenantable condition at the decease of Johanna D. Lane, when the life estate began. Their condition at the time of the purchase of the life estate by the plaintiff appears to have been due to the neglect of the life tenant to perform his duty with regard to keeping them in repair, and clearly at that time the duty of restoration rested upon him. If he had expended his money for the repairs which plaintiff caused to be made he could not have recovered therefor from the remaindermen, and I think plaintiff, having succeeded to the interest of the life tenant, is in the same position. It is not necessary to hold that plaintiff could have been

compelled by the remaindermen to restore the premises, but as it has done so voluntarily — has voluntarily performed the neglected duty of the life tenant whose interest it purchased — I think it is in no better position than the life tenant himself would have been to claim reimbursement, either in whole or in part, from the remaindermen.

If it be claimed that some of the work done consisted of improvements, and not merely of repairs or restoration, the answer is that as to these there is no evidence either that they were necessary for the preservation of the property or that the remaindermen assented thereto, and the plaintiff must, therefore, be deemed to have made them on its own responsibility and at its own expense. Most of the work, it seems clear, was necessitated by the neglect of the life tenant.

No authority has been cited, and I have been unable to find any authority in this state, precisely in point. The general rule is set forth in Jacobs v. Steinbrink, 164 App. Div. 715, in Prescott v. Grimes, 33 L. R. A. (N. S.) 669, and note, and in Frederick v. Frederick's Admr., 13 id. 514, and note. These authorities make it clear that generally speaking the cost of ordinary repairs and such improvements as are voluntarily made by the life tenant must be borne by him, and that the same rules apply to one who acquires the interest of the life tenant. See 13 L. R. A. (N. S.) 516, and note. The rule of the civil law in cases of usufruct was the same, as the following excerpts from 1 Domat's Civil Law, Strahan's Translation, Cushing's Edition, part 1, book 1, pp. 424, 425, serve to show: "The sixth engagement which the usufructuary lies under is to be at the necessary expenses for preserving and keeping in good case the places and other things of which he has the usufruct. Such as to make the small repairs of a house, to plant trees in the room of those which die in the ground, to manure and improve the lands, and to make the other lesser repairs, and to lay out the expenses which may be necessary for the cultivation and preservation of the places. But he is not bound to be at the charge of the greater repairs, such as the rebuilding of a house that is fallen without any neglect of his. * *. * All the engagements of the usufructuary are common to him who has the bare use, in proportion to his right of use. Thus, when his right gives him the whole thing, as if he has a right to inhabit a whole house, he ought to charge himself with what is delivered to him, to give the necessary security, take care of the places, use them without misusing or damaging them, make the repairs and bear the other charges which the usufructuary would be bound to do. But if his right is limited, as if he has only a part of a house, he is

liable to repairs and other charges only in proportion to what he possesses."

There are exceptions and qualifications, to be sure, and some of the cases supporting such exceptions and qualifications will now be noticed.

In *Thomas* v. *Evans*, 105 N. Y. 601, the husband of a female life tenant, who became entitled on marriage to enjoy his wife's life estate therein, purchased the remainder through a third party from the executors, who acted under a power of sale. Supposing that he had a valid fee title, he made improvements. In an action by certain of the remaindermen to set aside the executors' deed it was held that the defendant was entitled to reimbursement for the cost of his improvements. In this case, as will be seen, the improvements were made by the owner of the life estate in the belief that he owned the fee, and in most of the cases where a life tenant has been allowed the cost of his improvements he has made them under some such misapprehension. See 13 L. R. A. (N. S.) 516, note.

In *Stevens* v. *Melcher*, 152 N. Y. 551, where the beneficiary of a trust for her life advanced money to improve real property, the subject of the trust, it was held that the amount so advanced was a charge against the trust estate. But the case involved unusual circumstances and was decided largely upon the peculiar terms of the will creating the trust. In rendering the opinion of the Court of Appeals, Judge Haight said (p. 565): " Ordinarily the duty devolves upon tenants in common in possession, life tenants, or trustees for equitable life tenants, of preserving the premises, defraying the expenses of ordinary repairs, and of paying the taxes and the accruing interests upon mortgages which may incumber the premises. (*Matter of Albertson*, 113 N. Y. 434, 439.) They are not, however, compelled or required to bear the whole expense of permanent improvements required by the state or municipal authorities, such as assessments imposed for flagging a sidewalk. (*Peck* v. *Sherwood*, 56 N. Y. 615.) And where relief is sought through a court of equity and special equities exist in favor of a party who has made permanent improvements which were necessary for the preservation of the property an allowance may be made therefor. (*Ford* v. *Knapp*, 102 N. Y. 135.) "

And again, he said (p. 572): " Mrs. Stevens' right to be allowed the ninety thousand dollars and to have the same charged to the million-dollar trust as an investment by the executors, is dependent upon the broad principles of equity. There are many cases in the books in which relief of this character has been refused; many others in which it has been granted. Each case is largely dependent upon the cir-

Supreme Court, June, 1924. [Vol. 123

cumstances and special equities surrounding it, which may bring it within or distinguish it from, general rules. After a careful examination of the authorities, we have reached the conclusion that in this case Mrs. Stevens' equities are such that her claim should have been allowed, and the ninety thousand dollars charged to the trust estate."

In *Matter of Laytin,* 2 Con. Surr. 106, it was held that the cost of replumbing a house was apportionable between life tenant and remaindermen, but there is nothing in that case to show that the condition of the plumbing was due to neglect of the life tenant. If in the present case it had been made to appear that apart from the neglect of the life tenant a new roof or new plumbing and gas piping would have been necessary, an apportionment as to these items might perhaps be decreed, but there is no such evidence. There is nothing to show that if the premises had been kept in proper repair by the life tenant any extensive reconstruction would have been necessary. The same may be said of *Betts* v. *Betts,* 4 Abb. N. C. 317, 438, where the cost of plate glass windows and a tin roof (see 10th paragraph on p. 324 of headnote) was apportioned. In *Cromwell* v. *Kirk,* 1 Dem. Surr. 599, where the cost of flagging, building fence, lightning rods, marble mantels and trees and vines was directed to be apportioned, no facts appear to show the circumstances under which such improvements were made.

In *Matter of Whitney,* 75 Misc. Rep. 610, the improvement was not the result of the neglect of the life tenant and was made under virtual compulsion. In *Smith* v. *Keteltas,* 62 App. Div. 174, the buildings were old and had become untenantable, so far as appeared, without fault of the trustee for the life beneficiary. In *Matter of Deckelmann,* 84 Hun, 476, the trustee received the premises in an untenantable condition.

Several of the cases cited by the plaintiff relate to the apportionment of the cost of improvements, not between life tenant and remainderman, but between cotenants. If such authorities be applicable I think this case does not come within the rules for apportionment laid down in *Cosgriff* v. *Foss,* 152 N. Y. 104.

In view of the circumstances of the present case, I think that on the evidence presented no part of the sums expended by the plaintiff on the premises for repairs and improvements should be charged against the remaindermen.

I will, therefore, grant the motion to confirm the report of the referee except in the respects above indicated and will direct interlocutory judgment for the sale of the premises. Settle judgment on notice.

Ordered accordingly; judgment accordingly.