In the Matter of the Estate of ALEXANDER W. SHEPARD, Deceased.

Surrogate's Court, Kings County, March 20, 1930.

*Reynolds & Goodwin,* for the petitioner.

*Joseph M. O'Shea,* special guardian for Annie J. Gillette, an alleged incompetent person, and certain infants.

WINGATE, S.   The single question here presented arises upon a petition for the intermediate judicial settlement of the account of the substituted trustee of certain trusts created by the will of Alexander W. Shepard, which was admitted to probate in this court on November 4, 1896.

The entire estate was devised and bequeathed upon certain specified trusts.   The only portion of the account to which objection is made relates to expenditures made by the trustee for rental of a safe deposit box, aggregating $43.75, and for premiums on the trustee's bond, amounting to $1,062.04.   These expenditures cover the years 1922 to 1929.   The trustee has charged these sums to income.   This course is the subject of the objection, it being claimed that they should have been paid from principal.

The wording of the will, so far as pertinent, is as follows: The trustees are directed:

" 3. To collect and receive all the rents, issues, income and profits of my said estate, real and personal, and, after having paid therefrom all taxes and assessments of every character to which my said estate may be subject, all the expenses of keeping my said real estate, in good repair, and the legitimate expenses of executing the trusts hereby created, including the compensation of the trustees, out of the residue to apply," etc.

The supposed authority for the objection is found in a dictum by the Appellate Division for the First Department in *Mulligan* v. *Bond & Mortgage Guarantee Co.* (193 App. Div. 741, at p. 745) where the court is reported as saying: " The requirement of a bond from a trustee appointed by the court, who is to receive money or property, is to insure the beneficiaries and parties interested in the fund to be administered against loss through a depletion of the fund by misfeasance or malfeasance."

That the statement is merely *obiter* is obvious from a reading of the case. It was an action by a substituted trustee who had been appointed as such by the surrogate, without bond, on consent of all interested parties, to recover on a guaranty of defendant of certain securities purchased for the estate. The sole defense was that the trustee was not properly qualified and was, therefore, not authorized to sue. The *holding* of the court was that since the surrogate had jurisdiction of the matter of appointment, his manner of exercise of the power was not subject to collateral attack.

Even taken at its face value, however, the court is unable to agree that this excerpt from the opinion is authority for the position taken, since there is no indication as to the particular fund from which the payment of the cost of the bond should be made.

If the position taken by the objector is correct its results in a great majority of trusts would be unfortunate. It is, of course, the duty of a trustee to keep the principal funds as fully invested as possible so as to secure a maximum return for the life tenant. If, however, such expenses are payable from principal, it would be necessary either to keep a portion of the funds in a liquid condition, not compatible with maximum productivity, or else, from time to time, to sell a part of the investments so as to secure the money necessary to make the payments, which would be attended by considerable trouble and expense.

The rule applicable to real estate is well settled and is clearly stated in a great number of cases. A typical example is that contained in *Spencer* v. *Spencer* (219 N. Y. 459, at p. 465): " The general rule undoubtedly is that taxes and carrying charges on real estate held by trustees for a life beneficiary are to be paid out of the income of the trust estate, and are not properly chargeable to capital account, unless the will of the testator contains unequivocable directions to the contrary. * * * There is, however, no doubt that this rule of construction which requires the payment of taxes and carrying charges out of income yields when opposed to the plain intention of the testator."

In *Matter of Tracy* (179 N. Y. 501) the court says (at p. 511): " It is undoubtedly the general rule that the life tenant must pay

taxes, insurance and ordinary repairs, but when the testator manifests the contrary intention it will govern."

To like effect see *Clarke* v. *Clarke* (145 N. Y. 476); *Matter of Schuster* (123 Misc. 314; modified, 212 App. Div. 885); *Matter of Montgomery* (99 Misc. 473); *Matter of Boyle* (Id. 418); *Matter of Lichtenberg* (114 id. 89); *Hepburn* v. *Hepburn* (2 Bradf. 74).

It is, of course, the law that permanent improvements necessarily made by reason of official order are chargeable to principal (*Jacobs* v. *Steinbrink*, 164 App. Div. 715; *Matter of Parr*, 45 Misc. 564; *Smith* v. *Keteltas*, 32 id. 111; affd., 62 App. Div. 174; *Stevens* v. *Melcher*, 80 Hun, 514), and this applies to municipal assessments for permanent improvements. (*Matter of Young*, 17 Misc. 680; modified, 15 App. Div. 285; affd., 160 N. Y. 705; cf. *Furniss* v. *Cruikshank*, 191 App. Div. 450; modified, 230 N. Y. 495; modified, 231 id. 550.) On the other hand, expenses connected with alterations not of a permanent nature or which are made solely to increase the rental value must be paid from income. (*Gould* v. *Gould*, 126 Misc. 54; *Matter of Parr, supra.*)

The rule deducible from these authorities is that in the absence of express testamentary direction to the contrary, only such expenses as tend to enhance the value of the principal of the trust are chargeable thereto, while all ordinary expenses connected with the continuance of the property in substantially its existing state are payable from income.

No sound basis is perceived for applying a different rule to trusts, the corpus of which is personal property. While the decisions on this subject are not numerous, their uniform tenor is to such effect. (*Whitson* v. *Whitson*, 53 N. Y. 479, 481; *Reynolds* v. *Reynolds*, 3 Dem. 82, 84; *New York Life Ins. & Trust Co.* v. *Sands*, 24 Misc. 102, 106; *Matter of Brooklyn Trust Co.*, 92 id. 674; affd., 173 App. Div. 948.)

In the last cited case the court says (at p. 674): "The rule is that the just and proper expenses of carrying any of the assets of the trust, if incurred in a just and proper administration, must be borne by the income.

"Where the trust is that the life beneficiary shall have the net income, all that the will assures him is the income, less all the necessary expenses of mere maintenance. He then receives all which the will gives. His only misfortune is that the testator did not put into the trust in his behalf more or other property."

No sound distinction can be perceived between painting a house and paying a fire insurance premium thereon, which are unquestionably payable from income in the absence of express testamentary direction to the contrary, and renting a safe deposit box and paying

a premium on the trustee's bond. It is, therefore, determined that the latter are proper charges for the maintenance of the property of the trust and must be paid from income, since the instant will contains no direction to the contrary. The objection is, therefore, overruled.

Submit decree, on notice, accordingly.