Harry G. Herman, S.
In this independent proceeding for construction (Surrogate’s Ct. Act, § 145) the questions presented relate to the present disposition of the income and the future distribution of principal of a testamentary trust upon its termination.
The testator died on September 20, 1943. His last will and testament, dated August 11, 1941, and admitted to probate on November 18, 1943, was construed by this court in 1945 (Matter of Thall, 57 N. Y. S. 2d 698). Under article “ eighth ” of the will the testator created a trust of his residuary estate to be measured by the life of his wife, Alice. The will provides that if the annual trust net income is $4,000 or more, one half thereof should be paid to Alice and the remaining one half equally to testator’s sister Sophie and her sons Emanuel and Ben Ami. Should the net income thereof in any year be less than $4,000, $2,000 would be paid to Alice, and the remainder thereof equally to Sophie, Emanuel and Ben Ami. It was further provided with respect to income: “In the event that my said sister Sophie Levitsky or either of her said sons Emanuel Landis and Ben Ami Landis shall predecease me or shall die during the lifetime of my said wife, I direct that the share of the one so dying shall be paid to the survivor or survivors of them.”
Alice, Sophie, Emanuel and Ben Ami all survived the testator. Ben Ami died on October 7, 1956, survived by his daughter, Barbara Ann. After that date the remaining net income, after payment of her one-half share to Alice, was distributed equally to Sophie and Emanuel. Sophie died on March 26, 1961, and Emanuel thereafter received the entire balance of net income after the payment to Alice of her one-half share. On November 3,1962 Emanuel, who survived Sophie and Ben Ami, died without issue.
*1088 The will contains no provision for distribution of the remaining net income, after payment to Alice of her share, in the event that Sophie, Emanuel and Ben Ami all predeceased the widow.
In article “ ninth ” of the will the testator provided for the disposition of the trust corpus on the death of Alice. After legacies of $1,000 each to five individuals (with a provision for a lapse if a legatee fails to survive ¡both the testator and Alice), the residue of the trust remainder is directed to he paid:
“ [T]o my sister sophie levitsky and to her sons emanuel landis and ben ami landis, share and share alike. In the event that my sister sophie levitsky shall predecease me or surviving me shall predecease my said wife, I give and bequeath her share to her sons emanuel landis and ben ami landis.
“ Should either emanuel landis or ben ami landis predecease me or predecease 'my said wife, I give and bequeath the share of the one so dying to his surviving child or children, and if more than one, share and share alike.
“If either of my said nephews emanuel landis or ben ami landis should predecease me or surviving me shall predecease my said wife without leaving any child or children him surviving, I direct that his share shall be paid to his surviving brother. ’ ’
A question, then, also exists as to the disposition of the trust remainder.
With respect to the distribution of the balance of the net income after the payment to the widow, the other income beneficiaries having all predeceased the measuring life of the trust, section 63 of the Real Property Law mandates that such income “ shall belong to the persons presumptively entitled to the next eventual estate ” (Matter of Remsen, 37 Misc 2d 1071). Consequently, the question as to the disposition of the trust remainder is not academic (cf. Matter of Wilson, 41 Misc 2d 747).
It is the duty of the court in a construction proceeding to ascertain the intention of the testator, as expressed in the will, and that intention, when ascertained, must prevail (Matter of Horton, 40 Misc 2d 553, 555).
Whereas the courts of this State, in construing a gift of a remainder to a group of persons or their survivors, have often favored a construction relating the words of survivorship to the date of the testator’s death in the case of an absolute devise to one and in case of his death to another, the words of survivorship have been held to relate to the date of distribution where the first devisee or legatee takes a life estate. (Matter of Larkin, 9 N Y 2d 88 [1961]; Matter of Gulbenkian, 9 N Y‘2d *1089 363 [1961]; Matter of Buechner, 226 N. Y. 440 [1919]; Matter of Parsons, 242 N. Y. 246 [1926]; Vanderzee v. Slingerland, 103 N. Y. 47 [1886]; Matter of New York, Lackawanna & Western Ry. Co., 105 N. Y. 89 [1887]; Mead v. Maben, 131 N. Y. 255 [1892].)
The latter rule, which results in a construction that the testator imposed a condition that the named remaindermen survive the life tenant, has been followed even where it will or may result in intestacy (Matter of Gautier, 3 N Y 2d 502 [1957]; Mullarky v. Sullivan, 136 N. Y. 227 [1892] ; Fowler v. Ingersoll, 127 N. Y. 472 [1891]).
Here, the testator has expressly required the named remaindermen to survive until the time fixed for distribution of the trust corpus (cf. County Trust Co. v. Darling, 14 Misc 2d 57). This is not an absolute gift, with possession or enjoyment of the property postponed to a future date, in which case the interests of the named remaindermen would have vested at the testator’s death and would have passed to their estates on their failure to survive his wife, Alice, as was the case in Matter of Seaman (13 Misc 2d 110).
The question presented by this case is not novel. In Matter of Burdsall (128 Misc. 582, affd. on opn. below 221 App. Div. 756) on the death of the testatrix’ sister Edith, principal of the residuary trust was to go to two cousins, Margaret and Katherine: ‘ ‘ share and share alike, absolutely. In the event of the death of either said Margaret * * * or Katherine * * * before my decease, or after my decease, and before the death of my sister, Edith * * * I give, devise and bequeath the share of such deceased beneficiary in my residuary estate to her lineal descendants, share and share alike per stirpes and not per capita-, the same to them and their heirs forever.” (128 Misc. 582, 583.)
Both Margaret and Katherine predeceased Edith, but only Katherine was survived by issue who did survive Edith. Margaret’s collaterals contended that she had a vested remainder in one half which should be paid to Margaret’s estate, and the other one half to Katherine’s issue. The court rejected this argument. Nor did it decree that the entire principal should be paid to Katherine’s issue. Instead it ordered one half paid to Katherine’s issue, and this being the residuary clause (and since there can be no residue of a residue), the other one half passed by intestacy.
As Surrogate Slater said (128 Misc. 582, 583-584): “ Did the remainder interest in the trust fund vest in Margaret * * * and Katherine * * * in equal shares? The *1090 words of gift, to lineal descendants, in the event of the death of either said Margaret * * * or Katherine * * * before the death of the life beneficiary were words of substitution. In the event of their death, their lineal descendants are to be substituted for themselves. (Matter of Evans, 234 N. Y. 42.) The primary trust was for Edith * * * and upon her death, but not before, the two cousins were to succeed to the enjoyment of the estate. It is the opinion of the court that their title to the trust estate did not become indefeasible and perfect while the life beneficiary was living. Call it vested, or contingent, as you may, it was subject to be divested by their death before the passing of Edith * * * The direction to distribute was upon the death of the life tenant and those entitled in remainder take nothing, except as it may pass to them pursuant to the terms of the will * * * the remainder-men had during their lives an interest in the estate, subject to be defeated by their death prior to the termination of the trust. They took on the condition of survivorship * * * The provisions for a substitutional gift [to the lineal descendants of Margaret and Katherine] also indicates an intent to make survivorship at the time set for distribution of the fund a test of right to participate therein.”
In the instant case the testator failed to provide any direction for distribution of the trust corpus in the eventuality that actually occurred, that all the named remaindermen would predecease the measuring life of the trust, and that the survivor of the brothers would die without issue. The court cannot fill in an omission in the will to avoid intestacy or partial intestacy. (Matter of Gautier, supra, p. 510; Matter of Englis, 2 N Y 2d 395 [1957]; Matter of Slater, 3 N Y 2d 109, 112 [1957].)
Ben Ami Landis died on October 7, 1956 and, pursuant to article ‘ ‘ ninth ’ ’ of the will, since he failed to survive Alice, his one-third share of corpus vested in his daughter Barbara Ann. Then on March 26, 1961 Sophie died. In connection with her share, which was subject to divestment, on her failure to survive Alice, in favor of Emanuel and Ben Ami, no condition of survival was imposed. Hence, on Sophie’s death, her one-third interest in corpus passed equally to Barbara Ann Landis and Emanuel Landis.
When Emanuel died without issue on November 3, 1962, his share (% plus %, for a total of %) was divested by his failure to survive Alice (Matter of Burdsall, supra; Matter of Storm, 18 A D 2d 656; Matter of Taylor, 34 N. Y. S. 2d 200, 204; Matter of Smith, N. Y. L. J., Aug. 21, 1963, p. 10, col. 7-8; Matter of Doerschuck, 8 Misc 2d 422; Matter of Matthews, 154 *1091 Misc. 779). Accordingly, Emanuel’s share passed by intestacy (Wright v. Wright, 225 N. Y. 329 [1919]; Matter of Slater, supra; Matter of Englis, supra).
The argument that the testator intended Emanuel’s estate to take Ms share of the remainder, since he survived Ben Ami, rests on such cases as Matter of Merriam (168 Misc. 932); Matter of Hadden (178 Misc. 939), and Matter of McCombs (261 App. Div. 449, affd. 287 N. Y. 557 [1941]).
In those cases, where the trust remainder was to go to two persons “ or the survivor ” and both remaindermen predeceased the measuring life, the entire remainder was ordered paid to the estate of the survivor of the remaindermen on a finding that the testator intended that the remainder interest of each remainderman be vested on the testator’s death, subject only to being divested by being survived by the other remainderman.
This case differs from those in two aspects. Firstly, here the provision for the remainder going to the two brothers or the survivor was limited to the case where either died unsurvived by children. Hence, the potential remainder interest of Ben Ami, unlike those cases, on his death went to his daughter Barbara Ann and not to his brother Emanuel.
Secondly, a reading of the entire instrument herein manifests that the testator intended that survival of Alice be a condition of the named remaindermen taking under the will. Added support for this conclusion is found in the cases holding that words of survivorship relate to the time of distribution when the first devisee or legatee takes a life estate (Matter of Larkin, supra; Matter of Gulbenkian, supra), despite the fact that this results in partial intestacy (Matter of Gautier, supra; Mullarky v. Sullivan, supra; Fowler v. Ingersoll, supra). The argument by Emanuel’s estate must be rejected (Matter of Jay, 142 N. Y. S. 2d 234, affd. 1 A D 2d 661, affd. 1 N Y 2d 897 [1956]).
Matter of Dammann (12 N Y 2d 500 [1963]) did not involve distribution of income or principal of a testamentary trust, but only an outright gift of the residuary estate to eight named individuals, one of whom predeceased the testatrix therein, and, therefore, has no application herein.
No gift by implication may be found in this instrument. In Matter of Selner (261 App. Div. 618, affd. 287 N. Y. 664 [1941]) the residuary estate was disposed of only if the life tenant predeceased the testator, but she survived him. The same residuary disposition as if she had predeceased him was implied there in order to avoid intestacy.
*1092 The Court of Appeals, in rejecting a gift by implication and holding intestacy in Matter of Englis (supra, p. 402) limited Matter of Selner (supra), commenting, “ We think that was a rare and exceptional case.” A gift by implication was also rejected in Matter of Slater (supra, pp. 111-112) and Matter of Doerschuck (supra, p. 425). Nor is Matter of Krooss (302 N. Y. 424 [1951]) in point (see discussion thereof in Matter of Doerschuck (supra, pp. 426-427).
Accordingly one half of the trust remainder should be distributed, on the death of Alice, to Barbara Ann Landis, and one half to those who were the testator’s distributees at the date of his death (Matter of White, 213 App. Div. 82 [1st Dept., 1925]). The balance of the net income, therefore, of the trust, after payment to Alice of her share fixed in the will, is payable one half to Barbara Ann Landis and one half by intestate distribution.
The remaining question herein is the source of payment of the expenses of this proceeding and any counsel fees or allowances that may be awarded. The petitioner, Albert A. Sarafan, is one of two surviving coexecutors and cotrustees, the other being Alice Thall, decedent’s widow (the third, Emanuel Landis, as noted above, died on November 3, 1962). His position is that since the residuary trust is composed exclusively of real property, whose net income has averaged from $14,000 to $15,000 yearly, and there is no principal cash, and the real estate has produced a substantial amount of income at rates far in excess of any rates which may be procured from any other type of investment, it would be detrimental to the trust estate to require the trustees to liquidate the trust assets to create funds to pay the expenses of this proceeding and counsel fees and allowances. He requests that such be paid out of income on hand and to be accrued.
The estate of Emanuel Landis in its answer and cross petition takes the position that these should not be paid out of income but from principal. In its memorandum of law it urges that the fact that there is no cash principal does not justify a payment from income since “ [i]t should be possible for the trust to borrow the necessary funds.”
No other pleading was filed herein. Alice Thall, the widow, however, in her memorandum of law, urges that the expenses of this proceeding and any fees or allowances should not be paid from her one-half share of income but from the remaining half, whose distribution is the subject of this proceeding.
The special guardian for Barbara Ann Landis in his memorandum of law urges that it is within the discretion of the *1093 court to determine whether to charge expenses to income, to principal, or to apportion them between both.
In determining the validity and effect of the widow’s notice of election to take against this will pursuant to section 18 of the Decedent Estate Law, Surrogate Griffiths held that: “ the court may regard the provisions of the will as dividing the residuary estate into two equal parts with the entire net income of one of such parts payable to the widow of testator * * * The real estate in question is yielding a high return and apparently neither the widow nor any of the other interested parties desires to dispose of it. There is, of course, no obligation on the part of the widow to contribute any part of her share of income from the trust fund for the payment of amortization charges.” (Matter of Thall, supra, pp. 701-702.)
It would be inexpedient under the circumstances of this case to require such highly productive real property to be sold to pay the many attorneys involved in this proceeding. As stated in Matter of Shepard (136 Misc. 218, 219 [Surr. Ct., Kings County, 1930]), where objection was made to allocation of administration expenses of the trusts to income: “ If the position taken by the objector is correct its results in a great majority of trusts would be unfortunate. It is, of course, the duty of a trustee to keep the principal funds as fully invested as possible so as to secure a maximum return for the life tenant. If, however, such expenses are payable from principal, it would be necessary either to keep a portion of the funds in a liquid condition, not compatible with maximum productivity, or else, from time to time, to sell a part of the investments so as to secure the money necessary to make the payments, which would be attended by considerable trouble and expense.”
The objection therein was overruled.
An allowance in a construction proceeding, pursuant to section 278 of the Surrogate’s Court Act, is normally charged to the residuary estate or trust principal and is not usually charged solely upon the share or interest affected (Matter of Griffing, 31 Misc 2d 266), but this is a matter of discretion (Matter of Ablett, 3 N Y 2d 261, 279 [1957]; Matter of Dickinson, 10 Misc 2d 280).
Although principal as well as income was benefited by the construction, the question as to the disposition of income by reason of the death of Emanuel presented an urgent necessity for a construction, which would otherwise have been premature.
Moreover, those persons, or their estates, entitled to receive the trust remainder on the death of the measuring life of the trust, are the same persons entitled to receive the income over *1094 and above the widow’s one half, which was the subject of the construction herein, and in the same shares.
In this case, in the exercise of the court’s discretion, and under all the facts and circumstances herein, including the widow’s election and the prior decision of the court, the expenses of this proceeding and allowances, if any, shall be charged to that portion of income remaining after payment to the widow of her testamentary share. Any allowances shall be exclusively for legal services rendered by the attorneys which were of aid to the court in construing the will, and not for services rendered to or on behalf of their respective clients (Matter of Dickinson, supra; Matter of Gibson, 10 Misc 2d 282).
Settle decree construing the will accordingly.