In the Matter of the Application of MARY J. GATES for a Final Judicial Settlement of Her Accounts as Executrix, etc., and for Permission to Resign and Be Relieved from All Further Duties as Executrix of the Estate of JOHN GATES, Deceased.*

CHARLES J. POTWINE and Another, Appellants; MARY J. GATES and Others, Respondents.

Fourth Department, January 17, 1934.

* Modfg. and affg. 142 Misc. 83.

*Robert C. Winchell*, for the appellant Nora P. LaRock.

*Walter I. Hover* and *Eugene Raines*, for the respondents Edith P. Hover and Caroline P. Raines.

*Claude T. Taggart* and *J. Donald Shoecraft*, for the respondent Mabel P. Clark.

*George S. Tinklepaugh*, for the respondents State Bank of Williamson, as administrator with the will annexed of John Gates, deceased, and William J. Gates, as executor, etc., of Mary J. Gates, deceased.

TAYLOR, J.  This is an appeal from a surrogate's decree construing a will.  John Gates executed the will in 1881 and died in 1886.  He made his wife, Elizabeth, and his daughter, Mary Jane, executrices.  His wife predeceased him.  He left him surviving the daughter, Mary Jane, who died after this decree was made; a son, Joseph, who is not mentioned in the will; a daughter, Emma (Gates) Potwine, who died in 1924, leaving four children, Charles, William, Henry and Nora; a grandson, Theodore J. Parker, the " child of my [testator's] daughter Elizabeth," mentioned in paragraph third of the will.  Theodore's mother died in 1873 and he died in 1929, leaving no issue.  When Theodore was a small boy his father remarried, and of that marriage there are three living daughters, half-sisters of Theodore, Edith P. Hover, Caroline P. Raines and Mabel P. Clark, the respondents herein.  A son, Frank, died before Theodore died.

Paragraph third of the will, which presents the subject of the instant controversy, reads as follows, the portions italicized being of particular importance:

" *Third.* And I further give and bequeath to my said wife Elizabeth and my said daughter Mary Jane the use of all the rest,

residue and remainder of my Real Estate and personal property that I may have at the time of my decease and of every name and nature and kind soever for their use benefit and enjoyment equally between them for and during the term of their joint lives and to the survivor of either of them for and during the term of the life of such survivors, and *after the decease of my said wife Elizabeth and my said daughter Mary Jane the property so held by them I give and bequeath and devise as follows:* To the children of my daughter Emma A. Potwine, wife of Charles Potwine the equal one half part of Real Estate and personal property so held by my said wife and daughter equally between said children *and to their heirs and assigns.* And to the child of my daughter Elizabeth Parker deceased the other one half part of such Real estate and personal property so held by my said wife and daughter *should he be living but should his death occur before the vesting of the legacy herein given and bequeathed to him* then and in that case, my will is that the legacy so given and bequeathed to him shall be [given] and *I hereby give and devise the same to the children of my said daughter Emma A. Potwine* equally between them share and share alike *and to their heirs and assigns forever."*

The learned surrogate has decreed that the estate willed to Theodore Parker, child of testator's daughter Elizabeth, vested in him finally at testator's death (possession being postponed) and descended to respondents upon the death of Theodore. Appellants claim that this estate never finally vested in interest in Theodore, he having died before the survivor of the two life tenants. This is the sole question before us for consideration.

There are cases in our Court of Appeals which may seem to furnish authority for the decree appealed from; see *e. g., Matter of Farmers' L. & T. Co.* (189 N. Y. 202); *Corse* v. *Chapman* (153 id. 466); *Carr* v. *Smith* (25 App. Div. 214; affd., 161 N. Y. 636); *Fell* v. *McCready* (236 App. Div. 390, 400; affd., 263 N. Y. ——); *Hutchings* v. *Hutchings* (144 App. Div. 757; affd., 210 N. Y. 539); *Slater* v. *Slater* (175 id. 143); *Cammann* v. *Bailey* (210 id. 19), and *Connelly* v. *O'Brien* (166 id. 406). Chief Judge CULLEN makes an interesting commentary upon the *Connelly* case in *Cammann* v. *Bailey* (210 N. Y. at p. 33) as follows: " Indeed, to see how far this court will go in holding a legacy vested rather than disinherit remaindermen who may die before the termination of the precedent estate, I refer to *Connelly* v. *O'Brien* (166 N. Y. 406)."

On the other hand, there have been adjudications of our court of last resort which lend as much support to the claim of the present appellants. Such are *Holbrook* v. *Shepard* (220 App. Div. 64; affd., 245 N. Y. 618) and *Marsh* v. *Consumers Park Brewing*

*Co.* (220 id. 205). None of the cases cited, however, are of controlling importance in construing this will.

Our object is to discover the intention of the testator. If this can be done with reasonable certainty through consideration of the language of the testament, resort to any of the various canons of construction is unnecessary. The recognized desirability of early vesting of estates has been mentioned. So far as that is concerned in this case, in *Dougherty* v. *Thompson* (167 N. Y. 472, at p. 483) the court says: " It is true that the law favors the vesting of legacies as early as possible, but it does so to avoid perpetuities, intestacy, illegal suspension of the power of alienation, and to effect an intent which might otherwise be defeated. But when the intent is clearly otherwise and not violative of any statutory restriction, it must prevail. The intention is the paramount rule of construction."

And we discover no reasons — such, for example, as those relied on in *Goebel* v. *Wolf* (113 N. Y. 406) and *Cammann* v. *Bailey* (*supra*) — for finding that the testator intended early vesting.

Further consideration of canons of construction is unnecessary, since we find within the four corners of paragraph third adequate support for the claim of appellants. The testator wrote: " After the decease of my said wife Elizabeth and my said daughter Mary Jane the property so held by them I give and bequeath," etc. Then, following the provision for the children of testator's daughter Emma, comes the long sentence covering the rest of the property. It is to be observed that in the first part of paragraph third, comprising the gift to the children of Emma, nothing is said about their being alive at any particular time or about any vesting of the legacy as to them. When John Gates drew this will he was an old man and Theodore was not over eighteen years old. It seems unreasonable that when the testator used the words " should he be living but should his death occur before the vesting of the legacy herein given and bequeathed to him," the testator had in contemplation the likelihood of his surviving Theodore. In the absence of any reference to the " vesting " of the other one-half of the estate, the natural effect of these words just quoted, following so closely the reference to the holding of the property by the life tenants, seems to be to make the provision mean the same as if it read, " and the other one-half part of such real estate and personal property so held by my said wife and daughter I give to the child of my daughter Elizabeth immediately upon the death of the survivor of my wife Elizabeth and my daughter Mary Jane should he (Theodore) be then living, but should his death occur before the vesting of the said legacy at the time of the death of such

survivor, I hereby give and devise the same to the children of my said daughter Emma," etc. Unquestionably the gift over of the one-half of the estate first mentioned to the children of testator's daughter Emma *and* to their heirs and assigns created vested remainders. The conditional gift over of the other one-half of the property in case of the death of Theodore is to Emma's children " and to their heirs and assigns." But the gift to Theodore is not to him " and his heirs and assigns." It is to him in case he survives the two life tenants; otherwise — not to his heirs and assigns — but to his cousins, the children of his aunt Emma, their " heirs and assigns."

" Under these circumstances it could not be determined, until the death of the life tenant, as to who should finally become vested with the fee of the premises in question." (*Camp* v. *Cronkright*, 59 Hun, 491.)

We adopt the following statement of Judge CARDOZO at page 103 of his opinion in *New York Life Ins. & Trust Co.* v. *Winthrop* (237 N. Y. 93) as an apt commentary upon the problem we have under discussion: " When we speak in this connection of the vesting of an interest, we mean, of course, a vesting that is absolute and final. The statutory definition of vested and contingent estates sheds little light upon the problem, for an estate may be vested within the definition of the statute, though defeasible by death before the moment of division (*Moore* v. *Littel*, 41 N. Y. 66; *Campbell* v. *Stokes*, 142 N. Y. 23, 30; *Clowe* v. *Seavey*, 208 N. Y. 496, 502; *Doctor* v. *Hughes*, 225 N. Y. 305, 310). The only significant distinction for the purpose now in view is between an estate that is absolute and one subject to conditions (*Matter of Curtis*, 142 N. Y. 219, 223; *Matter of Seaman*, 147 N. Y. 69, 75)." (See, also, *Matter of Watson*, 262 N. Y. 284, at p. 299, where the court speaks of " a vested remainder to be divested upon the coming of issue.") The statute makes expectant estates descendible, but that declaration is subject to the rule that contingent interests may be such as to prevent descent. (*Clowe* v. *Seavey*, 208 N. Y. 496.)

Another circumstance deserves consideration. Since an intermediate estate for life stood between the testator's tenure and any estate devised to Theodore, the presumption is not that the words of survivorship refer to the time of testator's death, but that the words of contingency (" should he be living ") refer to the event which would determine the life estate. (*Lyons* v. *Ostrander*, 167 N. Y. 135, and cases discussed at p. 140.)

We, therefore, reject the claim that upon the death of the testator, John Gates, one-half of his estate vested finally in interest in Theodore, possession alone being suspended until the last sur-

viving life tenant died. The paragraph under consideration, taken in its entirety, points directly to the conclusion that Theodore J. Parker took no more than a " contingently vested " remainder descendible to these respondents only in case Theodore survived both life tenants. His death, which occurred before that of one life tenant, divested his estate.

" The question is one of intention to be gathered from the whole will, with context and cognate gifts shedding light upon the meaning." (*Matter of Evans*, 234 N. Y. 42, 45.)

The last paragraph of the " construction " portion of the decree appealed from should be modified to read as follows: " It is hereby adjudged and determined that under the will of said John Gates, deceased, his estate at his death vested in fee a one-half part thereof in the children of his daughter Emma A. Potwine, and the other one-half part thereof vested finally in fee in the children of Emma A. Potwine upon the death of Theodore J. Parker, he not having been living at the time of the death of the surviving life tenant."

We award costs out of the estate to each appellant filing a brief.

All concur.

Decree modified on the law, with costs to appellants appearing by separate attorneys and to the executor, payable out of the estate, and as modified affirmed.