In the Matter of the Accounting of Louis P. Snyder et al., as Surviving Executors and Trustees under the Will of Elisabeth Campbell, Deceased, and of Sanford Chafee, as Administrator of the Estate of Carl F. Hofferberth, Deceased Executor of Elisabeth Campbell, Deceased. New Rochelle Hospital et al., Appellants; Morris Gutt, Special Guardian of Carl F. Hofferberth, Jr., and Another, Infants, et al., Respondents.

Argued March 10, 1954; decided April 23, 1954.

30

*John Lane, James T. Heenehan, Edmond M. Hanrahan* and *Warren J. Dawson* for New Rochelle Hospital and another, appellants. I. The will properly construed and, following the intention of the testatrix, gives the remainder of the trust to the three designated charitable institutions. II. It was the intention of the testatrix to give to the designated charitable institutions if Carl F. Hofferberth did not survive to the time of distribution. (*Matter of Burdsall,* 128 Misc. 582, 221 App. Div. 756.) III. An examination of the will discloses the testatrix' intention to give only to the specific persons or charities named therein.

*Richard J. Turk, Jr.,* and *Harry A. Leigh* for Manhattan Eye, Ear and Throat Hospital, appellant. Under the true meaning and construction of the will, the nephew, having predeceased the termination of the trust, neither he nor his estate has any inter-

est in the principal of the trust fund, and such principal is distributable equally among the three appellants. (*New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Krooss*, 302 N. Y. 424.)

*John J. Dillon* and *Edward F. Asip* for Sanford Chafee, as administrator, respondent. I. The will created a vested remainder in Carl F. Hofferberth, subject to being divested only if he had predeceased both the sister and cousin of the testatrix. (*Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Matter of Tamargo*, 220 N. Y. 225; *Matter of Krooss*, 302 N. Y. 424; *Matter of Merriam*, 168 Misc. 932; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Benton*, 244 App. Div. 56, 269 N. Y. 579.) II. The remainder could not be divested except by clear and unequivocal language. (*Herzog* v. *Title Guar. & Trust Co.*, 177 N. Y. 86; *Matter of Rooker*, 248 N. Y. 361; *Clarke* v. *Leupp*, 88 N. Y. 228; *Byrnes* v. *Stilwell*, 103 N. Y. 453; *Goodwin* v. *Coddington*, 154 N. Y. 283; *Banzer* v. *Banzer*, 156 N. Y. 429; *Matter of Hayes*, 263 N. Y. 219; *Connelly* v. *O'Brien*, 166 N. Y. 406; *Scott* v. *Guernsey*, 48 N. Y. 106; *Matter of Brown*, 93 N. Y. 295; *Matter of Johnson*, 212 App. Div. 768; *Matter of Werner*, 167 Misc. 92.) III. The testatrix could reasonably have intended the construction advocated by respondent and adopted by the Surrogate; contrary views of what is reasonable should not prevail over the plain terms of the will or overthrow settled rules of construction. (*Matter of Watson*, 262 N. Y. 284.) IV. If doubt exists, that interpretation should be adopted which prefers blood relations to strangers. (*Wood* v. *Mitcham*, 92 N. Y. 375; *March* v. *March*, 186 N. Y. 99; *Matter of Werlich*, 230 N. Y. 516; *Matter of Rooker*, 248 N. Y. 361; *Matter of Pettit*, 241 App. Div. 209.)

*Morris Gutt*, special guardian for Carl F. Hofferberth, Jr., and another, infants, respondents. The decree as affirmed, reflects the plain expressed intent of testatrix. (*Herzog* v. *Title Guar. & Trust Co.*, 177 N. Y. 86; *Tilden* v. *Green*, 130 N. Y. 29; *Matter of Watson*, 262 N. Y. 284; *Matter of Krooss*, 302 N. Y. 424; *Wood* v. *Mitcham*, 92 N. Y. 375; *March* v. *March*, 186 N. Y. 99; *Matter of Rooker*, 248 N. Y. 361.)

FULD, J. Elisabeth Campbell died in January of 1943, leaving a will in which she placed the bulk of her estate in trust — to be measured by the lives of her sister, Bertha Hofferberth, and of her cousin, Emily Van Hovenberg — for the benefit of those two and a nephew, Carl Hofferberth. The income, the will provided, was to be divided among Bertha, Emily and Carl, and, upon the termination of the trust, its corpus was to go to Carl and his heirs " absolutely and forever." If, however, Carl died before Bertha and Emily, or if all three predeceased the testatrix, the trust corpus or the residue of the estate, as the case might be, was to be given to three charitable institutions, the appellants upon this appeal. The will, insofar as here relevant, reads in this way:

" Upon the death of my cousin, EMILY SEVILLE VAN HOVENBERG, and of my sister, BERTHA HOFFERBERTH, the said trust shall come to an end, and I do hereby give, devise and bequeath the principal or corpus thereof, and any accumulated income thereof, unto my nephew, CARL F. HOFFERBERTH, for himself and his heirs, absolutely and forever.

" In the event, however, that my nephew, CARL * * * should die before the death of my sister, BERTHA * * * and my cousin, EMILY * * * then upon the death * * * [of Bertha and Emily], I do hereby give, devise and bequeath the principal or corpus of the trust hereinabove created, and any accumulated income thereof, share and share alike,"

to Manhattan Eye, Ear & Throat Hospital, New Rochelle Hospital and Colburn Memorial Home.

Emily predeceased the testatrix. Carl outlived both of them, but died before Bertha, survived by two young children. On Bertha's death in 1952, the trust came to an end, in accordance with the provision of the will. That precipitated a dispute, between the executors and trustees under Elisabeth Campbell's will and the administrator of Carl's estate, as to the disposition of the trust corpus. The former, in their petition for judicial settlement, took the view that the corpus should go to the three institutions, while the latter, respondent upon this appeal, maintained that Carl or, more precisely, his estate was entitled to take.

Simply put, the issue before us is whether Carl had to survive the termination of the trust — that is, outlive both Bertha and Emily — in order to be entitled to the remainder. Under applicable principles of testamentary construction, it is clear, no such requirement of survival was intended or imposed.

The first paragraph quoted above indisputably gave Carl a vested interest which was not to be defeated by his death before the trust ended. "Upon the death of" her sister and her cousin, the testatrix declared, the "trust shall come to an end, and I do hereby give, devise and bequeath the principal * * * unto my nephew * * * for himself and his heirs, absolutely and forever." Had the will gone no further, the remainder to Carl — as a person "in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates" (Real Property Law, § 40; see, also, *Matter of Watson,* 262 N. Y. 284, 299) — would have been indefeasibly vested. Such being the case, that clear and absolute grant could not be cut down by language contained in a later testamentary provision, unless "that language [was] as clear and decisive as that which created the vested remainder." (*Matter of Krooss,* 302 N. Y. 424, 428; see, also, *Matter of Rooker,* 248 N. Y. 361, 364; *Herzog* v. *Title Guar. & Trust Co.,* 177 N. Y. 86, 93; *Goodwin* v. *Coddington,* 154 N. Y. 283, 286.) Moreover, the courts have long expressed a preference for a testamentary construction which results in an early indefeasibility, an early and final vesting of estates. Accordingly, a construction which renders a vested remainder defeasible will be restricted to the exact circumstances specified. (See, e.g., *Matter of Krooss, supra,* 302 N. Y. 424, 428; 2 Powell on Real Property [1950], § 330, pp. 729, 730; 3 Restatement, Property, § 254.)

The will's further language indicates that the condition under which Carl's remainder could be defeated was very narrowly circumscribed. When read literally — and it is a reasonable reading — it demonstrates that Carl's interest was subject to divestment only upon the happening of a single contingency — his death before that of the testatrix' sister "and" her cousin. The remainder was to be divested, not if he died after the death of one and before the death of the other or after the death of both, but only if he died before both of them.

The appellant charitable institutions, however, would have us read the " and " as " or," for they argue that the language in question accomplishes a divestiture of Carl's remainder if he died before the death of the testatrix' cousin or sister or, to put it slightly differently, before their collective deaths. In effect, treating Carl's remainder as contingent upon his survival, appellants maintain that, since Carl was to receive the remainder only " upon the death of " the testatrix' sister and cousin, he was not entitled to it unless he survived them. The argument borders on verbal legerdemain, confusing as it does the time of enjoyment of the remainder with the time of its vesting in interest. The use of the phrase, " upon the death of," as an adverbial expression of time has on innumerable occasions been interpreted to annex futurity only to possession and not to the substance of the gift. (See *Matter of Krooss, supra,* 302 N. Y. 424, 431; *Staples* v. *Mead,* 214 N. Y. 625, affg. 159 App. Div. 922, 152 App. Div. 745; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Matter of Bates,* 272 App. Div. 559, 562; *Matter of Bostwick,* 203 App. Div. 158, 159.) In addition, words of " present gift " — in this case, " I do hereby give, devise and bequeath the principal " to Carl " absolutely and forever " — afford further proof that his remainder was vested. " An explicit present gift of a future interest implies, in the absence of contrary indications, that the intervening estate * * * merely suspends the enjoyment of the interest and does not prevent the vesting thereof." (Powell, *op. cit.,* § 331, p. 735; see, also, Restatement, Property, *op. cit.,* § 257.)

We will not speculate on whether the testatrix had some reason for making a distinction betweeen Carl's death before the death of both Bertha and Emily and his death after the death of only one of them. It is enough that the testatrix declared that such was her desire. Beyond that, the " constructional preference " for " favoring the blood of the testator rather than strangers " (*Matter of Rooker, supra,* 248 N. Y. 361, 364) and for early indefeasibility will not be disregarded unless the testamentary language employed makes such a course mandatory. (See, e.g., *Matter of Krooss, supra,* 302 N. Y. 424; Powell, *op. cit.,* § 330, p. 729.)

If Elisabeth Campbell had created a trust for the lives of her sister and cousin with a remainder to Carl, *if he be living at their deaths,* his interest would then have been conditioned upon his surviving the other two and would have become indefeasibly vested only if he were alive at the termination of the trust. (See, e.g., *Matter of Gates,* 239 App. Div. 666, 671; 3 Jessup-Redfield on Surrogates' Law and Practice [Rev. ed., 1949], § 2434.) But the testatrix did not so provide, and Carl did not have to outlive both of the other life beneficiaries.

The situation is not too unlike that in *Matter of Krooss* (*supra,* 302 N. Y. 424), however different the family relationships involved and the type of language employed. There, the testator gave his wife a life estate, remainder to his children Florence and John, but — the will proceeded — if either died before their mother, leaving descendants, the descendants were to take their parent's share. We there held that Florence, who died before her mother, without having had descendants, took a vested remainder subject to being divested only upon the happening of the exact conditions stipulated, namely, death before her mother, leaving descendants. Since both those conditions did not eventuate, her share remained vested and went to her next of kin upon the death of the life beneficiary. So, here, Carl's remainder was subject to divestiture only upon the happening of the one condition specified in the will, and, since it did not occur, his interest remained vested and passed to his estate when the trust ended.

Moreover, the type of " supplanting limitation " employed may well point the construction to be adopted. " Supplanting limitations differ," writes Powell in his work on Real Property (*op. cit.,* pp. 729–730), " in that some provide a taker who is to become the substitute whenever the prior taker fails to survive, while others provide a taker who is to become the substitute only under some circumstances. In cases of the second type, the constructional preference for early indefeasibility causes the requirement of survival to be strictly construed, and to operate only under the exact circumstances stipulated." (See, also, Restatement, Property, *op. cit.,* § 254.) In the case before us, the " supplanting limitation " in the will is of the second type, with the consequence that appellants

became " substitute " takers only if Carl failed to survive both Bertha and Emily. When that " exact " event did not transpire, when, in other words, Carl, having survived the testatrix, outlived Emily, appellants could not possibly establish their right to the remainder over. Our conclusion must, of necessity, be that Carl's vested interest passed to his estate upon the termination of the trust.

The order of the Appellate Division should be affirmed, with costs to all parties appearing separately and filing separate briefs, payable out of the estate.

Van Voorhis, J. (dissenting). In the construction of wills, presumptions are not indulged if the effect is to violate the intention of the testator as expressed in the instrument (*Matter of Tamargo*, 220 N. Y. 225). That, it seems to me, is the consequence of applying to this will the presumption in favor of vesting applied in such cases as *Matter of Krooss* (302 N. Y. 424, 428) and *Matter of Watson* (262 N. Y. 284, 299).

The question is whether Carl F. Hofferberth's remainder was divested by his death before the termination of the trust. Such was clearly the intention of the testatrix, who made a substitutional gift of the remainder to charitable institutions in that event. The measuring lives were those of testatrix' cousin and sister. Her will states that " Upon the death of my cousin, EMILY SEVILLE VAN HOVENBERG, and of my sister, BERTHA HOFFERBERTH, the said trust shall come to an end," in which event the remainder is given to the nephew Carl. If that was all there were to it, Carl *would* have taken a vested remainder that would not have been subject to divestment in event of his death before the termination of the trust. The next paragraph, however, expressly states that in the event of Carl's death " before the death of my sister, BERTHA HOFFERBERTH; and my cousin, EMILY SEVILLE VAN HOVENBERG, then upon the death of my said sister, BERTHA HOFFERBERTH, and my cousin, EMILY SEVILLE VAN HOVENBERG, I do hereby give, devise and bequeath the principal or corpus of the trust hereinabove created * * * unto * * * MANHATTAN EYE, EAR & THROAT HOSPITAL, of New York City, NEW ROCHELLE HOSPITAL, of Guion Place, New Rochelle, New York, and COLBURN MEMORIAL HOME, of New Rochelle, New York ".

Having measured the trust in accordance with the rule against perpetuities by the lives of Emily and Bertha, the manifest intention' was to give the remainder to these charities instead of to Carl if Carl died before the trust ended when, if he were then living, it would have vested in interest in him. The meaning is that if Carl should die before Bertha and Emily were both dead, then Carl's remainder would be divested and would pass to the charitable institutions which are substituted in his place. It is a familiar canon of interpretation that the singular is to be read as the plural, and vice versa, where the wording and structure of the instrument or statute indicate that such was the intent (General Construction Law, § 35; *Culver* v. *Title Guar. & Trust Co.*, 296 N. Y. 74; *People* v. *Gates*, 56 N. Y. 387, 392).

In this instance testatrix demonstrated in this very clause that when she said " death " she meant " deaths ", inasmuch as the will speaks .of the " *death* of my sister, BERTHA HOFFER-BERTH, *and* my cousin, EMILY SEVILLE VAN HOVENBERG," (italics supplied). In the previous paragraph she had also mentioned " the death of my cousin, EMILY * * * and of my sister, BER-THA HOFFERBERTH ". By referring to the death of two persons, testatrix obviously meant their deaths. It is equally plain that she intended the plural in using the singular where she divests Carl's remainder if he " should die before the death of my sister, BERTHA HOFFERBERTH, and my cousin, EMILY SEVILLE VAN HOVENBERG ". That signifies the deaths of both Bertha and Emily, and means that Carl's remainder is divested unless he survives them both. She plainly intended to give the remainder to the charities instead of to Carl unless he survived Bertha and Emily, whose joint lives measured the duration of the trust. He survived one but not the other, in which event the will, without ambiguity, gives the remainder to the three appellant charitable institutions.

The order appealed from should be reversed and the remainder held to belong to appellants, with costs to parties appearing payable out of the estate.

LEWIS, Ch. J., CONWAY, DESMOND, DYE and FROESSEL, JJ., concur with FULD, J.; VAN VOORHIS, J., dissents in opinion.

Order affirmed.