Roy M. Page, S.
The will herein was dated January 31, 1931 and probated June 25, 1934. The reason for the many intervening years since then is that the final judicial settlement of the estate could not be reached during the term of an intervening life tenancy which has recently terminated.
This will, throughout its length- of several pages, is so abounding in ambiguous, conflicting and, in some instances, contradictory provisions it undoubtedly sets some sort of a record. This will, although, apparently, not drafted by a layman, serves as an outstanding example of the advisability, in all but the simplest forms of wills, of obtaining the services of an experienced and expert draftsman. Included in the agreed *555 statement of facts filed herein is a list of 14 issues of construction to be determined. If we were to treat and discuss each of these in full, it would require the writing of a book of several hundred pages. In order to escape this-, the purpose of the present decision will be to, without extensive discussion, resolve the major issues, leaving several minor ones to be determined upon settlement of the decree herein. It appears advisable to quote excerpts from some of the actual provisions of the will here in question, but which will be limited to those which are the most crucial. Paragraph “Second ” provides 28 general legacies amounting in all to $17,200. Of these 28, five lapsed. There appears to be no question to be resolved in relation to the 23 unlapsed general legacies as they all had been paid at the date of a previous accounting in 1935, nor as to the five lapsed legacies, totaling $4,000, as they have been previously determined to have passed into the residuary estate.
Paragraph “Third” of the will comprises a devise and bequest in favor of the testator’s housekeeper, Mary McFall, consisting of her life use of the testator’s residence, known as No. 519 East Main Street, Endicott, N. Y., “ she to have the use of the entire property and all rents and incomes to be derived therefrom during her lifetime, for her support.” In addition, as to said Mary McFall, the testator provided that she be paid, “ out of my estate,” the sum of $50 per month, “ for her maintenance also, that all of the furniture and furnishings contained in his residence were to be reserved for the life use of said Mary McFall and that fuel, taxes, insurance and repairs were to be paid out of the testator’s estate.
Up to this point the benefits provided for the testator’s housekeeper, Mrs. McFall, were couched in absolute terms, so that, if necessary, they would have been payable from the proceeds of principal assets of the testator’s estate. But the final sub-paragraph of paragraph “Third” qualified the preceding-absolute provisions as follows: The payment of the said allowance of $50.00 during the lifetime of the said Mary McFall as hereinbefore stated, and all other expenses provided in connection with the legacy herein given to the said Mary McFall, are to be met and paid out of the income from the residue of my personal estate, consisting of stocks, securities, moneys deposited in banks on interest account, in the Endicott Trust Company, and other interest bearing securities, which I may own at the date of my decease. ’ ’
It appears that, about four months previous to the death of the life tenant, the corporate legal representative of the estate *556 had induced Mrs. McFall to vacate the premises so that they could be sold pursuant to a power of sale contained in the will and, shortly thereafter, sold and conveyed these premises for $14,200.
Because of insufficiency of income applicable to the maintenance of the premises occupied by Mrs. McFall and payment of $50 a month to her, according to the account herein, there was a deficit in the amount of $7,473.67, which is now claimed by her estate as a charge against the proceeds of principal assets of the estate of Maurice M. Mercereau, deceased. Against this, it is contended by counsel for the accounting executor and various respondents herein that this claim is untenable because of the last above-quoted provision of the will purporting to confine the means of pajonent of the $50 per month and maintenance expenses of the premises to income only. In contradiction of this contention, it is urged by counsel for the estate of Mary McFall, deceased, that the provisions of paragraph “Third” of the will, having made an unconditional bequest of $50 a month in favor of said Mary McFall, together with all expenses necessary for the proper maintenance of the premises occupied by her as life tenant, that the above-quoted final provision must be disregarded in the light of case authorities to the effect that a later and less positive provision will not be permitted to cut down a preceding absolute provision, the only case cited by him on this question being Tillman v. Ogren (227 N. Y. 495).
But it seems clear that this authority is not applicable to the present situation since the qualifying provision providing for a limitation is as definite and certain as the language preceding it creating the gift. All is found together in the third paragraph which deals only with the testator’s purpose and intent insofar as his housekeeper, Mary McFall, was concerned. Except as, upon settlement of the decree herein, as contended by counsel for the McFall estate, it may be possible to show that, since the inception of the estate herein, some portion of the income has been expended for payments or purposes for which the proceeds of principal assets might have been employed, the express terms of the will, being in no sense merely precatory but positively mandatory, constrain the conclusion that the last above-quoted language of the will prohibits our making up this deficit or any part thereof.
In addition to the provisions contained in paragraph ‘ ‘ Third ’ ’ of the will, the said Mary McFall appears to have been otherwise provided for as follows :
(1) Among the 28 general legacies provided in paragraph “Second” of the will, we find a general legacy expressed as *557 follows: “I give and bequeath to Mrs. Mary McFall of Pits-burg, Pennsylvania, the sum of One Thousand Dollars ($1000.00).” Her estate is entitled to the benefit of this general legacy provided there is no question but that “ Mrs. Mary McFall of Pitsburg, Pennsylvania” is the same person mentioned and referred to in paragraph ‘ ‘ Third ’ ’ of the will.
(2) Also, in the provision contained in subparagraph second of paragraph ‘ ‘ Fourth ’ ’, viz., ‘ ‘ I authorize and empower my executors hereinafter named to dispose of and sell real property, and to make, execute and deliver good and sufficient deeds or other instruments of conveyance thereof. The same to be sold at such price or prices as in the judgment of my executors shall be deemed fitting and proper, and the money arising from the sale thereof to be divided equally among the several persons hereinbefore named as legatees under this, my will ’ ’. Mary McFall, or her estate, qualifies under this provision as she is “ among the several persons hereinbefore named as legatees under this, my will,” both in the “ Second” and Third ” paragraphs.
(3) Also, testator or his attorney saw fit to amplify the residuary provision by another provision found as subparagraph fourth of paragraph “ Seventh ”, providing: “ All the rest, residue and remainder of my said property of every name, nature and description and wherever situate, which I shall own at the time of my decease, or in which I shall have any interest, legally or equitably, and all accumulations of interest or income there may be from the date of my death, to the date of the distribution of my said estate, as herein provided, I give and bequeath to my then surviving heirs, (not to include institutions) the same to be divided equally amongst them, share and share alike.” (Emphasis supplied.) From the context in which it appears, it is quite apparent that the testator’s usage of the term ‘ ‘ heirs ’ ’ can only be reasonably construed and interpreted as he had in the previous provision stated correctly as “ legatees ”.
While a cardinal rule of construction gives rise to a presumption against disinheritance of blood relatives (1 Davids on New York Law of Wills, § 496, pp. 814-817), the words, “ to my then surviving heirs, (not to include institutions) ” (emphasis supplied), must be construed in conjunction with the other provisions of the will. The courts have often construed the word “ heirs ” as meaning legatees when other provisions in the will have indicated that the testator’s intent was to make bequests to persons other than the blood relatives of the testator. (See Ann. 70 A. L. B. 581.) There can be little doubt that the *558 testator herein, in using the words, ‘ ‘ to my then surviving heirs, (not to include institutions) ” did not intend the word “heirs” to mean that class of people that included only his blood relatives. This is clearly indicated by the parenthetical phrase, “ (not to include institutions) ”, since institutions are incapable of being heirs in the technical sense or meaning of the word “ heirs ”.
There appears throughout the will a pattern of distribution of the excess moneys or lapsed bequests to be distributed among the named legatees. As stated above, in subparagraph second of paragraph “ Fourth ” of his will, the testator states as follows : ‘ ‘ and the money arising from the sale thereof to be divided equally among the several persons hereinbefore named as legatees under this, my ivill”. (Emphasis supplied.) To further substantiate this pattern of distribution, the testator, in subparagraph one of paragraph ‘ Fourth ’ ’ of his will, which provides for a reversion to his estate of the legacies of persons who predeceased him, used these words, “to be distributed amongst the personal residuary legatees in this, my will, named, and not to include any of the institutions or corporations to which legacies are given.” The testator, in this provision, states in definite and unambiguous terms that it is his intention that, as to these lapsed legacies, they were to be distributed amongst (sic) the “ personal residuary legatees ” named in his will and that the institutions were not to share in the lapsed legacies. There are no other legatees named in the testator’s will except the corporations named in subparagraph one of paragraph “Seventh”. The only persons that the testator could have been referring to in subparagraph one of paragraph “Fourth” are those named in paragraph “Second” of his will. Therefore, it is my determination that it was the intention of the testator to give and bequeath his residuary estate to the named legatees in paragraph ‘ ‘ Second ’ ’ of his last will and testament, excluding those who predeceased the testator and the named corporation. Since Mary McFall was one of the named legatees in paragraph “ Second ”, her estate is entitled to share in the residuary estate of the testator.
There remains the question of construing the phrase, “ my then surviving heirs,” in its entirety. There are two possible constructions or interpretations of this phrase: Legatees who survived the testator, and those who survived the life tenant. In general, the law favors the vesting of estates at the time of the testator’s death. In Connelly v. O’Brien (166 N. Y. 406, 408) the Court of Appeals, holding that “then” referred to *559 the death of the testator, declared: “ The construction to be given to the instrument does not depend, however, upon grammatical rules or any close analysis of the language employed, but upon settled principles applicable to all wills. A remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates. The adverbs of time, therefore, such as when, then, after, from, and after, etc., in a devise of a remainder limited upon a life estate, are construed to relate merely to the time of the enjoyment of the estate and not to the time of its vesting in interest.”
The Court of Appeals has also held in Matter of Campbell (307 N. Y. 29, 34) that words of “ ‘ present gift ’ ”, such as, “ ‘ I do hereby give, devise and bequeath, ’ ” afford proof that a remainder is vested. The testator, in subparagraph four of paragraph “ Seventh ” of his will, used words of present gifts, viz., “ I give and bequeath.” It is my determination that it was the testator’s intention to vest the bequest of his residuary estate at the date of his death to those persons named as legatees in paragraph ‘ ‘ Second ’ ’ of his will who survived him, and that the word ‘ ‘ then ’ ’ relates merely to the time of possession and enjoyment of the estate and not to the time of its vesting in interest.
(4) As previously mentioned, the executor, because of the lack of sufficient income derived from the assets of the estate with which to keep up the repairs and other expenses, by a long and persistent effort, finally induced Mrs. Mary McFall to remove from her home, leaving it free to sell it pursuant to a power of sale in the will. The estate of Mrs. McFall is entitled to the actuarial value of her legal life estate as determined pursuant to the American Tables of Mortality based upon her age at the date of relinquishing her occupancy of the house, in conjunction with the stipulated monthly rental value of the house.
The will contains certain provisions which constitute attempts to make charitable bequests. These are:
‘ ‘ Second: * * *
" I give and bequeath unto the Salvation Army of Binghamton, New York, the Five Hundred Dollars ($500.00) that Ella E. Mercereau left to me by her will, the use of for life.
* * *
“ Seventh : At and after the death of the said Mary McFall in case she shall remain my housekeeper, during the remainder of my lifetime, and thereby become entitled to the legacy herein-before provided for, I will and direct that all of my estate, real *560 and personal, that shall remain, not hereinbefore disposed of, be reduced to cash for the purpose of distributing the same and out of the same I give and bequeath to the Tuberculosis Hospital at Chenango Bridge, New York, the sum of Two Thousand Dollars ($2000.00).
‘ ‘ I give and bequeath to the home for the blind at Binghamton, New York, the sum of Two Thousand Dollars ($2000.00).
‘1 give and bequeath unto the Humane Society of Binghamton, New York, the sum of Five Hundred Dollars ($500.00).
“ I give and bequeath unto the Salvation Army having its citidel at Washington Street, Binghamton, New York, the sum of Five Hundred Dollars ($500.00).”
None of these bequests is made to a qualified legatee as none of them was at the time of the drafting of the will, nor is at the present time, an incorporated entity. Pursuant to an application of the doctrine of cy pres and as agreed to in the agreed statement of facts herein, suitable and proper recipients of these various gifts are determined as follows: 1. The Salvation Army; 2. County of Broome (for use and benefit of Broome County Tuberculosis Hospital); 3. Blind Work Association, Inc.;
4. Broome County Humane Society and Belief Association, and
5. The Salvation Army.
Settle decree in accordance with this decision.