In the Matter of the Estate of ROBERT A. HALL, Deceased.

Surrogate's Court, Yates County, December 14, 1966.

*Joseph W. Furlong, Jr.,* for Migy Gantt. *Denton, Moseson & Keyser (Edgar Denton* of counsel), for Marine Midland Trust Company, as executor of Carolyn A. Hall, deceased. *Roger B. Hudson,* as supervisor of guardianships for Ruth Hall, widow and sole beneficiary of Francis Hall, deceased. *Walter O. Vail* for Priscilla Demus and another. *Frederick M. Hunt,* as executor of Madaline F. Hall Malony, deceased.

LYMAN H. SMITH, S. Upon his voluntary accounting as representative of a deceased representative (Surrogate's Ct. Act, § 257) Frederick M. Hunt, Esq., prays for a determination and construction of the terms of paragraph "Third" of the last will and testament of Robert A. Hall, deceased, which reads as follows: "THIRD.—I give, bequeath and devise to my wife, Madaline F. Hall, our home in Glenora, together with her widow's third of my estate. The remaining two-thirds of my estate I direct shall be held in trust and the interests and benefits of said trust be given to my wife during her life, at her death the trust to be terminated and the property divided equally among my brothers and sisters". This is the only residuary clause, as such, in the will.

The testator, Robert A. Hall, died April 30, 1936, survived by his wife, Madaline, two sisters, Adalaide P. Hall and Carolyn Hall, and three brothers, Julius Hall, Francis Hall and Charles Hall. He had no children.

The life benficiary, Madaline F. Hall Malony, who had remarried, died September 25, 1965.

All of the brothers and sisters of Robert A. Hall predeceased the life beneficiary.

Query: Who is entitled to receive the remainder of the Robert A. Hall estate?

On May 16, 1942, Francis Hall died, a resident of Syracuse, New York. His will, admitted to probate, named his wife, Ruth Hall, as sole beneficiary. Francis Hall, was also survived by a daughter, Migy Gantt. Ruth Hall is presently confined in a mental institution in Detroit, Michigan, and appears herein by her duly appointed guardian, Roger B. Hudson, Supervisor of Guardianships, Department of Welfare, Detroit, Michigan. Migy Gantt, daughter and only child of Francis Hall, is alive and resides in Philadelphia, Pennsylvania.

On March 26, 1947, Julius R. Hall died in Chicago, Illinois, leaving a will which was duly probated, naming his wife, Mary Wells Hall, as sole beneficiary of his estate. Mary Wells Hall died May 16, 1963, leaving a will which was duly probated wherein she left her entire estate to an adopted daughter, Priscilla Demus. Julius and Mary Wells Hall had adopted two children, Priscilla Demus and Norman Hall, both of whom are still alive, and neither of whom are related by blood to Julius Hall.

On March 28, 1949, Charles Hall died a resident of Chicago, Illinois, leaving a will naming his wife, Kathryn S. Hall as sole beneficiary. He was also survived by a daughter, Virginia Hagan, who is still living. Kathryn S. Hall died intestate December 2, 1951, (presumably in Chicago, Illinois) leaving her only child, Virginia Hagan, surviving her.

On February 23, 1953, Adalaide P. Hall died testate a resident of Elmira, New York, leaving a life estate to her sister Carolyn Hall and the remainder to her three brothers (Francis, Julius, and Charles) all of whom, as above set forth, had predeceased her.

On March 24, 1965, Carolyn Hall died testate a resident of Elmira, New York, leaving her entire estate to her three brothers or their distributees. Carolyn Hall had been admitted to a home for the aged in Elmira, New York on November 16, 1961, and thereafter reputedly executed an assignment of her estate to the home. Parenthetically, it should be noted the Carolyn Hall estate is an open estate in Chemung County and the estate tax proceedings have not been completed. It is assumed both the home for the aged and the State of New York, although not parties to this proceeding, will be concerned in the disposition made here.

We deal here with a classic problem of 'time of vesting'. The basic question is, whether or not the remainder interest of Robert A. Hall was indefeasibly vested in his brothers and

sisters *at the death of the testator?* Stated another way, was the remainder interest of Robert A. Hall vested in his brothers and sisters subject to being divested by their failure to survive the life beneficiary?

Of prime consideration in this construction proceeding is the intention of the testator as expressed in the will which, if not wholly clear, '' must be gleaned not from a single word or phrase but from a sympathetic reading of the will *as an entirety* and in view of *all the facts and circumstances* under which the provisions of the will were framed '' (*Matter of Fabbri,* 2 N Y 2d 236, 240; emphasis supplied).

There is no question the pertinent provision here provides for a gift to a class — '' my brothers and sisters ''. It is significant the class was identifiable. (Cf. *Pimel* v. *Betjemann,* 183 N. Y. 194.) His brothers and sisters and the life beneficiary were all alive when the testator drew the will and all were alive when he died. He knew the objects of his bounty and his intentions in this regard are clearly set forth in his will. It is even more significant that the testator used no words of survivorship or of substitution.

While there are many cases holding a devise of a remainder to follow a life estate creates an estate that is vested subject to divestment (*Matter of Larkin,* 9 N Y 2d 88; *Matter of Gulbenkian,* 9 N Y 2d 363; *Matter of Leo,* 20 A D 2d 807) none of these cases, and none like them, so hold, *unless* the testator has used words and phrases which provide for remaindermen's survival of the life beneficiary, or for survivorship among the remaindermen, or *unless* from clear provisions for substitution of remaindermen one may clearly imply the necessity of surviving the life tenant in order to establish a vested remainder. In other words, where a gift of a remainder vests in an identifiable class at the time of testator's death, survival or survivorship of members of that class to time of distribution is not required for vesting in the members of the class and will not be so found *unless* there is an express provision to that effect in the will, or unless there is some basis in the context thereof implying such provision. (*Matter of Blydenburgh,* 24 Misc 2d 896; *Matter of Seaman,* 13 Misc 2d 11; *Matter of Slavens,* 4 Misc 2d 82.) In the instant case there is neither such provision, nor any implication thereof.

There is no practical evidence here the testator intended to vest the remainder of his estate in his brothers and sisters subject to a condition subsequent — that they survive the life beneficiary — and which would in the event of their prior death divest them of the same. Otherwise phrased, there is nothing

here that would indicate the testator intended to impose a requirement of survival on his brothers and sisters.

Furthermore, the fact the gift of the remainder was to a class, rather than *nominatim,* does not, standing by itself, raise a requirement of survival to the time of distribution. (*Matter of Blydenburgh, supra.*)

In the typical case where our courts have found the remainder subject to divestment, i.e., contingent upon surviving the life beneficiary, (*Matter of Larkin, supra; Matter of Gulbenkian, supra*) the wills have contained either unequivocal or clear implications of gifts over, e.g., " to my brothers  *  *  *  *and their several descendants*" (*Matter of Gulbenkian, supra,* p. 368) ; " *In the event* that any of my said sons *should die leaving descendants, said descendants shall take the share of* any such deceased son, *per stirpes* and not per capita ". (*Matter of Larkin, supra,* p. 91.; emphasis supplied.) These are words and phrases calling for survival to take and/or substituting the descendants per stirpes in the event the remaindermen do not survive the life beneficiary. In the instant case there are no such words or phrases. The gift is absolute — " to my brothers and sisters ". There is no more. Again, it is only by testator's reference, either express or implied, to the remainderman's death, or reference to remainderman's failure to survive, that will justify a construction that the remainder vests upon termination of the intermediate estate rather than upon the death of the testator.

If, in the present case, the testator had bequeathed the remainder, upon his wife's death to his " *surviving* " brothers and sisters, or to his brothers and sisters " *if any be living at her death* ", the words and phrases creating such contingent remainder would be present and would have clearly indicated testator's intent that their interest was to be contingent upon their surviving the life beneficiary. There are no such words here. This point was noted in *Gulbenkian* (*supra,* p. 370) where Judge Burke, writing for the Court of Appeals, said: " If he [the testator] had intended an indefeasible gift, he could have ended paragraph Fifth after the bequest of the remainder ' in equal shares ' ". Judge Fuld, in his dissent (*Gulbenkian, supra,* pp. 375, 376) concurs with the majority of the court on this point and also cites *Matter of Campbell* (307 N. Y. 29, 35) which included similar phraseology and which would have created an indefeasible remainder if the will had not gone further.

It is also significant that in the present case the testator directed the " *remaining two-thirds* of my estate  *  *  *  be held in trust  *  *  *  [and] at her death the trust to be

terminated and the property *divided equally among* my brothers and sisters.'' (Emphasis supplied.)

The words '' remaining two-thirds '' may only be equated with residue. There was no more. The futuristic direction that the trust '' be terminated ''—'' at her death ''—may not be interpreted as postponing the vesting of the remainder, because traditionally such words have been construed to relate to time of enjoyment of the remainder and not to time of vesting. (*Riker* v. *Gwynne,* 201 N. Y. 143; *Hutchings* v. *Hutchings,* 144 App. Div. 757, affd. 210 N. Y. 539; *Bergmann* v. *Lord,* 194 N. Y. 70; *Connelly* v. *O'Brien,* 166 N. Y. 406; *Haug* v. *Schumacher,* 166 N. Y. 506.) Indeed, it is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which marks the difference between a vested and a contingent remainder. As the Court of Appeals stated in *Matter of Campbell* (307 N. Y. 29, 34): '' The use of the phrase, ' upon the death of,' as an adverbial expression of time has on innumerable occasions been interpreted to annex futurity only to possession and not to the substance of the gift * * * ' An explicit present gift of a future interest implies, *in the absence of contrary indications,* that the intervening estate * * * merely suspends the enjoyment of the interest and does not prevent the vesting thereof '. ([2] Powell, [Real Property, 1950], § 331, p. 735; see, also, [3] Restatement, Property, § 257).'' (Emphasis supplied.) Again, in the present case, there are no '' contrary indications ''.

While, as previously indicated, the courts of this State, in construing à gift of a remainder to a group *or their survivors* or contingent upon their *survival,* have generally favored vesting as of the date of distribution, (*Matter of Larkin, supra; Matter of Gulbenkian, supra; Matter of Parsons,* 242 N. Y. 246; *Matter of Beuchner,* 226 N. Y. 440), and have followed this rule of construction even where it has, or will, or may, result in intestacy (*Matter of Gautier,* 3 N Y 2d 502 [1957]; *Mullarky* v. *Sullivan,* 136 N. Y. 227 [1892]) nevertheless, as in the instant case, where testator failed to provide any direction whatsoever for distribution of the trust corpus in the eventuality that actually occurred, i.e., death of the remaindermen prior to termination of the life estate, our courts have continued to favor early and indefeasible vesting (*Matter of Seaman,* 13 Misc 2d 110; *Matter of Crosby,* 39 Misc 2d 668). It may well be said, the law continues to favor early and indefeasible vesting—and frowns on contingent estates. (*Matter of Statts,* 272 App. Div. 139, affd. 297 N. Y. 648; *Matter of Askew,* 7 Misc 2d 561.)

The rule favoring vesting, in the absence of provisions for survival or substitution, applies with particular force where, as here, the gift is of the residue of the estate. (*Matter of Astor,* 5 Misc 2d 722, affd. 5 A D 2d 940; *Matter of Seaman, supra; Matter of Cohen,* 1 Misc 2d 463; also, see, *Allen* v. *White,* 201 Misc. 1034; *Matter of Haradon,* 173 Misc. 993; *Matter of Krooss,* 302 N. Y. 424; *Fulton Trust Co.* v. *Phillips,* 218 N. Y. 573.)

Since the testator failed to provide for " survival " or " substitution " this court may not so provide. If it is agreed, " The court cannot fill in an omission to avoid intestacy " (*Matter of Thall,* 41 Misc 2d 1086, 1090; also, see, *Matter of Gautier,* 3 N Y 2d 502, 510) it must follow the court cannot find a contingent estate where none exists, or create intestacy, by supplying words of survivorship or substitution which, in fact, are not present. (*Matter of Ashner,* 24 A D 2d 595, 596.)

Obviously, it was testator's first and last intention that his brothers and sisters take as tenants in common—" equally ". He added nothing. He apparently had no thought they would not survive him *and* his wife. If he had thought of this perhaps he would have said something to enlighten us. He did not. Parenthetically, it is of some significance the testator provided no power to invade the principal for the wife's benefit (cf. *Matter of Nicholas,* 50 Misc 2d 76) although such discretionary power could not, in and of itself, prevent vesting. (*Matter of Krooss,* 302 N. Y. 424; *Matter of Payne,* 12 Misc 2d 861; cf. *Matter of Hornblower,* 180 Misc. 517.)

This court may not distort by additions to the sparse and precise language used by the testator merely to avoid a complicated distribution. Nor, may this court add to his words to effect a gift (by intestacy) to " heirs of his blood " that he never knew. It is more reasonable to conclude he trusted his own flesh and blood, i.e., his " brothers and sisters ", to distribute his estate rather than to leave that task to the tender care of the laws of intestacy. (Cf. *Matter of Fabbri,* 2 N Y 2d 236; *Matter of Krooss, supra,* p. 428.)

I am of the opinion the gift provided for by the " Third " paragraph of the will of Robert A. Hall, deceased, to his " brothers and sisters " vested equally in those brothers and sisters in being at the time of his death, viz., in Francis Hall, Julius R. Hall, Charles F. Hall, Adelaide P. Hall and Carolyn A. Hall. Accordingly I so hold.

Finally, the respective indefeasibly vested interests herein are descendible, devisable and alienable. (Real Property Law, § 59; 2 Powell, Real Property, § 238.)

Subject to costs and allowances upon this proceeding, distribution may be decreed to the legal representatives of the estates of the five deceased brothers and sisters of the testator, provided however, upon submission of satisfactory proof of payment of debts, expenses and New York State estate taxes due, if any, in such estates or intervening estates, distribution may be made directly to those now entitled thereto. (Cf. *Matter of Merrill,* 188 Misc. 441.)