OPINION OF THE COURT
Barbara Howe, J.
In each of the within proceedings for judicial settlement of testamentary trusts, common questions have arisen, namely, whether a great-grandchild of each decedent is entitled to share in the trusts at issue, and, if so, to what extent. By memorandum and order decided December 18, 2012, I issued a decision partially answering the questions posed but continued to reserve decision and directed that further briefing take place with respect to certain issues which had not been addressed by any of the parties but which might have significance to the outcome. Those supplemental papers have now been submitted by all the parties, and I find and decide as follows.[1]
(A)
Dorothy Wilding and her husband, James Wilding, set up trusts under each of their wills. Dorothy died on January 29, 2002 and James died on May 23, 2004. Each will was admitted to probate in this court, on February 7, 2002 and May 28, 2004, respectively, and trusteeship letters were also issued with respect to the trusts created under each will.
*178 When Dorothy died in 2002, she was survived by her husband, James, her son, Bruce Wilding, and her daughter, Susan Reich. According to the record before me, Bruce had one child, a son born in 1971, Michael Wilding, known now as Michael Randolph. Michael has three children, one by each of his three wives: Amanda Randolph (born in 1992), Brooke Lauren Locey (born in 1997), and Jake Ryan Randolph (born in 2012).
James’ distributees following his death in 2004 were the same as Dorothy’s, except that he had no surviving spouse.
Dorothy and James executed their wills on November 13, 2001, and each will contained generally identical provisions. Insofar as relevant here, each will provided for a credit shelter trust and a residuary trust, with the surviving spouse as the beneficiary of each trust. Under each will, upon the death of the surviving spouse, the trusts were to be divided into two equal parts, one for Bruce and the other for Susan. It is only the Bruce trusts that are at issue here.
Under article third of each will, a credit shelter trust was established. The trustees were authorized to “pay or apply so much of the net income and such portion of the principal to or for the benefit of one or more of a class of beneficiaries consisting of my [spouse] and my children in such amounts and proportions as the Trustees, in their discretion, shall determine” (emphasis added).
As to the article third share for Bruce, the wills each provided:
“One of the shares shall be held in trust for my son, BRUCE WILDING, and my Trustees shall pay such amount of the income to him, or apply the same for his benefit, as my Trustees consider necessary or advisable for his health, support, comfort, welfare and education, and shall accumulate any income not so paid or applied and add it to principal periodically, at least annually. In addition, my Trustees may pay to him or his issue, or apply for their benefit, such part of the principal of the trust as my Trustees consider necessary or advisable for their health, support, comfort, welfare and education” (emphasis added).
Following Bruce’s death, his article third trust share was to be handled as follows:
“My Trustees shall continue to hold one-third (1/3) of the trust for the benefit of my grandson, MICHAEL WILDING, and my Trustees shall pay *179 such amount of the income to him, or apply the same for his benefit, as my Trustees consider necessary or advisable for his health, support, comfort, welfare and education and shall accumulate any income not so paid or applied and add it to principal periodically, at least annually. In addition, my Trustees may pay to him or his issue, or apply for their benefit, such part of the principal of the trust as my Trustees consider necessary or advisable for their health, support, comfort, welfare and education. Upon the death of my grandson, this trust shall terminate and the balance shall be distributed to his issue, per stirpes, and if none, to my issue, per stirpes” (emphasis added).[2]
With respect to each article fourth trust, made up of the residuary estate, the beneficiary is the surviving spouse. Upon the death of that surviving spouse, the balance of the trust is divided into two equal shares, one for Bruce and one for Susan, and administered pursuant to the terms of the article third trust. The estate executor was given discretion to add the article fourth share of Bruce and Susan to his or her article third trust share.
(B)
(i)
One of Michael’s children, his daughter, Brooke, was born of his second marriage. Following the dissolution of that marriage, Brooke’s mother remarried, and, in December 2005, Brooke was adopted by her stepfather.[3] As a result of these circumstances, the trustees have requested that I determine whether Brooke qualifies as “issue” of Michael, and, therefore, whether the trustees may make distributions from the trust to her during Michael’s lifetime, as well as pass on to her a share of the remainder upon Michael’s death.
(ii)
Although Brooke’s status as an adopted-out child is governed by the law of the situs of the adoption, in this case Nevada, her “ ‘right to take property by will or inheritance’ from a New York domiciliary is adjudicated ‘in the same light as though *180 [she] had been duly adopted under the laws of New York’ ” (Matter of Morrow, 187 Misc 2d 742, 744 [2001], quoting Matter of Leask, 197 NY 193, 196 [1910]; see also EPTL 3-5.1 [b] [2]). Therefore, New York law governs regarding Brooke’s ability to inherit from and through her birth father, Michael.
New York Domestic Relations Law provides that the “rights of an adoptive child to inheritance and succession from and through [her] birth parents shall terminate upon the making of the order of adoption except as hereinafter provided” (Domestic Relations Law § 117 [1] [b]).
The legislature has recognized, however, that adopted-out children are not all similarly situated, and the statute was amended to create an exception for intra-family adoptions under certain delineated circumstances. Domestic Relations Law § 117 (1) applies to intestacy (see Domestic Relations Law § 117 [1] [i]), whereas Domestic Relations Law § 117 (2) applies where a will or inter vivas trust is concerned (see Domestic Relations Law § 117 [2] [a]),[4] and the exceptions have been strictly applied (see e.g. Matter of Rizzo, NYLJ, Dec. 21, 2010 at 28, col 2; Matter of Cruikshank, 192 Misc 2d 450 [2002]). This case falls under Domestic Relations Law § 117 (2).
I have previously determined that Brooke was a member of the class of Michael’s issue prior to her 2005 adoption. But, because Dorothy and James are Brooke’s birth great-grandparents, Brooke is considered too remote a descendant of each to take under either will pursuant to the exceptions of Domestic Relations Law § 117 (2) (b).
However, I also previously noted that there is another possibly relevant statutory provision which could, if applicable, permit Brooke to take under both wills. Domestic Relations Law § 117 (2) (d) provides that inheritance rights cannot be defeated by adoption out when those rights “have vested on or before [Aug. 31, 1986], or . . . have vested prior to the adoption regardless of when the adoption occurred” (emphasis added).
The “vesting” issue had not been addressed by the parties when this matter was first before me, and I directed the parties to submit further memoranda about it.
I turn now to that reserved issue.
*181 (C)
(i)
As stated supra, Domestic Relations Law § 117 (2) (d) provides that “this subdivision shall not impair or defeat any rights which have vested . . . prior to the adoption regardless of when the adoption occurred” (emphasis added). The Law Revision Commission in its recommendation to the 1986 legislature gave the following example:
“Granny executes an instrument pursuant to which her daughter (D) is to take a life estate in Black-acre, remainder interest to ‘D’s children, living at my [Granny’s] death.’ The only child of ‘D’ living at Granny’s death was ‘A’. After Granny’s death but before ‘D’s’ death, ‘A’ is surrendered for adoption by ‘strangers.’ At Granny’s death, ‘A’s’ remainder interest vested and ‘A’ cannot be divested of such property interest by operation of law” (1986 McKinney’s Session Laws of NY at 2593).
Many cases illustrate the various ways an adopted child’s property interest can vest prior to her adoption: by contract (Matter of Friedman, 146 Misc 2d 91 [1989]); by accrual of a cause of action (Alberino v Long Is. Jewish-Hillside Med. Ctr., 87 AD2d 217 [1982]; Matter of Mittendorf, 195 AD2d 468 [1993]); by simply existing before a change in the law which sought to take away that interest retroactively (Matter of Karron, 52 Misc 2d 367 [1966]); or by operation of future interests (Matter of Campbell [Svenningsen], 29 Misc 3d 786 [2010], affd 105 AD3d 164 [2013]).
A future interest is created when the instrument creating it becomes legally effective (EPTL 6-3.4). For purposes of construing a will that has been admitted to probate, the will is legally effective and “speaks” from the date of death of the testator (Matter of Whipple, 42 NY2d 1031, 1032 [1977]; Matter of Goldberg, 275 NY 186, 192 [1937]). If a future interest is created in favor of someone other than the person creating it, it is classified as a remainder (EPTL 6-4.3). A remainder can be “indefensibly vested,” “vested subject to open,” “vested subject to complete defeasance,” or “subject to a condition precedent” (which is often referred to as contingent) (see EPTL 6-3.2 [a] [2] [A], [B], [C], [D]).
The intention of the testator is the paramount consideration when construing any provision of a will (Matter of Fabbri, 2 *182 NY2d 236, 240 [1957]; Matter of Singer, 13 NY3d 447, 451 [2009]; see also Matter of Phillips, 101 AD3d 1706, 1708 [2012]). However, there are many rules of construction that are helpful when the testator’s intent is not readily apparent. One such rule of construction is that the law favors early vesting of estates (Matter of Chalmers, 264 NY 239, 247 [1934]; Matter of Campbell, 307 NY 29, 33 [1954]). A remainder should not be considered contingent in any case where it may fairly be construed as vested (Connelly v O’Brien, 166 NY 406, 408 [1901]), because it promotes the alienability of property by enabling it “to be freely transferred at the earliest possible date” (Matter of Krooss, 302 NY 424, 427 [1951]), and because it is preferable to “avoid the disinheritance of remaindermen who may happen to die before the determination of the precedent estate” (Connelly v O’Brien at 408).
A remainder interest in a class gift is vested subject to open, rather than contingent, when there is at least one person who is “ascertained and in being” (EPTL 6-4.8) and who “would have an immediate right to possession on the determination of all intermediate or precedent estates” (Matter of Clearwater, 14 AD2d 625, 625 [1961]). The interest is subject to open because each member’s share is subject to diminution should other members of the class come into being (EPTL 6-4.8).
The fact that a remainder interest is not to become possessory until a future stated time “may not be interpreted as postponing the vesting of the remainder, because traditionally such words have been construed to relate to time of enjoyment of the remainder and not to time of vesting” (Matter of Hall, 52 Misc 2d 612, 616 [1966]). More importantly, when a testator uses the phrase “upon the death of’ when referring to the timing of the distribution of the remainder, its meaning is “interpreted to annex futurity only to possession and not to the substance of the gift,” and “ ‘the intervening estate . . . merely suspends the enjoyment of the interest and does not prevent the vesting thereof ” (Matter of Campbell at 34).
However, it has been noted that, where remainderpersons “are a vertical class (more than one generation) such as ‘issue’ or ‘heirs’ or ‘next of kin’, the presumption is against vesting and in favor of a condition of survival” (11 Warren’s Heaton, Surrogate’s Court Practice § 194.04 [3] [a] at 194-40 [7th ed 2006] [emphasis added]).
*183 (ii)
Returning to the petition in each of these proceedings, the trustees ask that this court determine, inter alla, the following:
“[w]hether Brooke Lauren Locey who was a daughter of Michael Randoph and Jennifer Locey and who has been adopted by Gregory Locey, the husband of Jennifer Locey, is ‘issue’ of Michael Randolph and therefore a permissible person to whom the Trustees may distribute principal of the continuing trust for the benefit of Michael Randolph for her health, support, comfort, welfare and education . . and whether Brooke “is a remainder [person] of [the] trust.”
Brooke was born in 1997, and was issue in being when Dorothy died in 2002 and when James died in 2004. The will provisions of both Dorothy and James directed that the trust for Bruce could be utilized by the trustees to “pay to him or his issue, or apply for their benefit,” such part of the trust corpus as the trustees determine might be either “necessary or advisable for their health, support, comfort, welfare and education” (emphasis added). Because Brooke was a member of the class of Bruce’s “issue” in being at the inception of each of these two trusts, and because she was not adopted out until 2005, I find that her right to receive discretionary present distributions from the trusts was vested at the latest on the date of James’s death (May 23, 2004) with respect to the trusts under both Dorothy’s will and James’s will. That interest having vested in each of these trusts prior to the date that Brooke was adopted out, I conclude that Domestic Relations Law § 117 (2) (d) applies and that Brooke’s vested right to receive discretionary present distributions from the trust(s) continues notwithstanding her adoption out in December 2005.
With respect to the second issue before me, namely, whether Brooke is a remainder person of each testamentary trust, I decline to adjudicate that issue. The question of who is a remainder person of those trusts depends on many facts and circumstances, including facts and circumstances present at the time Michael dies.[5] That is the operative date for determining this second issue, because the right to enjoy or receive remainder person benefits will not arise until Michael’s death, an event which could be many years in the future.
*184 I conclude, therefore, that the issue of whether Brooke is an ultimate remainder person of each of these trusts is not ripe for adjudication at this time (see e.g. Matter of Gardiner, NYLJ, July 28, 1989 at 2, col 6; see also Matter of Sterns, NYLJ, June 13, 1989 at 23, col 3).

. In order that this decision is complete and understandable on its own, I repeat here various aspects of my December 18, 2012 decision. However, even if that decision is not repeated in full at this time, it is nevertheless incorporated by reference herein.

. The remaining two thirds of the trust for Bruce from article third was left to the Community Foundation for Greater Buffalo.

. See decree of adoption filed Dec. 14, 2005 in Clark County, Nevada.

. Domestic Relations Law § 117 (2) was amended by the Laws of 1986 (ch 408). (See generally Matter of Piel, 10 NY3d 163, 167-168 [2008], for a comprehensive review of the policy issues contained in, and the statutory history of, Domestic Relations Law § 117; see also Matter of Murphy, 6 NY3d 36 [2005].)

. To give but one possible relevant future scenario, it might be that Brooke could return to live with Michael and be adopted back by him before he dies.